Clinton MANGES, Petitioner,

v.

J.C. GUERRA, et al., Respondents.

No. C–771.

Supreme Court of Texas.

June 13, 1984.

Rehearing Denied July 11, 1984.

Pat Maloney, Adams & Hunter, Royal D. Adams, San Antonio, Luther Jones, Jr., Corpus Christi, Watson & Henderson, Murray Watson, Jr., Waco, for petitioner.

Smith, McIlheran, Lauderdale & Jones, Garland F. Smith, Weslaco, Dibrell, Dotson, Dibrell & Dibrell, T. Kellis Dibrell, San Antonio, Flores, Sanchez, Vidaurri, Munoz & Guerra, David H. Guerra, McAllen, McGinnis, Lochridge & Kilgore, Lloyd Lochridge and Thomas O. Barton, Austin, H.P. Guerra, III, Rio Grande City, for respondents.

POPE, Chief Justice.

We grant the motion for rehearing and withdraw the court's former opinion as well as the concurring and dissenting opinion.

This appeal concerns the proper exercise of the executive right of a mineral estate. The suit is one of several suits filed in the controversy among the various parties. The present suit was filed by J.C. Guerra and others against Clinton Manges, Gas Producing Enterprises and the Bank of the Southwest National Association. Clinton Manges and several members of the Guerra family were mineral co-tenants, with Manges holding the executive right to all the minerals. The Guerras sued Manges for failure to exercise diligence in leasing the minerals to third persons and for leasing a portion of the minerals to himself at allegedly unfair terms. The trial court rendered judgment removing Manges as holder of the executive rights; cancelling a lease Manges executed to himself; voiding, as to the Guerras' interests, certain transactions between Manges and third parties; and awarding the Guerras $382,608.79 in actual damages and $500,000 in exemplary damages. The court of civil appeals affirmed the judgment of the trial court. 621 S.W.2d 652.

This cause was tried by a jury and judgment was rendered on jury findings in favor of the Guerras. Those issues and findings are stated in the opinion of the court of appeals, and that court has found that each issue is supported by sufficient evidence. The issues are not attacked in this court. We affirm the judgment cancelling the lease that Manges made to himself. We affirm the award of damages for Manges' failure to lease the Guerra mineral acreage not covered by the Manges-to-Manges lease which the jury found he could have leased, and upon the basis of those actual damages we sustain the award of punitive damages. We reverse the judgment that removed Manges as the executive.

On March 31, 1969, Clinton Manges entered into a contract to purchase 72,000 acres of land in Jim Hogg and Starr counties from the M. Guerra & Son Partnership. Under the contract, Manges was to purchase all of the surface and an undivided one-half of the partnership's 55,000 to 60,000 mineral acres. The sale was to include the executive rights to the one-half mineral interest reserved by the Guerras. Litigation among members of the Guerra family resulted in the land being placed with a receiver. On August 20, 1971, the receiver executed a deed conveying the land to Manges in accordance with the contract of sale. The deed provided that Manges was not to lease the Guerras' mineral interest for less than a one-eighth royalty; also, it expressly provided that the Guerras were to participate "in all bonuses, rentals, royalties, overriding royalties and payments out of production." An agreed judgment rendered on June 11, 1974, adjudged that Manges was the owner of 53.4 percent of the minerals and the Guerras owned 46.6 percent.

In addition to the M. Guerra & Son Partnership land, between 1968 and 1970, Manges purchased the Virginia C. Guerra Estate, which consisted of 21,000 surface acres and about 16,000 mineral acres. Manges acquired the land by purchasing the undivided interests of the various Virginia C. Guerra descendants. As with the M. Guerra & Son Partnership land, Manges received all of the surface and an undivided one-half of the minerals. The sale included the executive rights to the one-half mineral interest reserved by the Guerras, subject to the limitation that Manges could not lease the minerals for less than a one-eighth royalty. The M. Guerra & Son Partnership owned an undivided one-seventh of the Virginia C. Guerra Estate land, and Manges received this interest by virtue of the June 11, 1974 agreed judgment.

The Guerras assert a number of ways that Manges used the executive powers to benefit himself with no similar benefit to the non-executives. On May 10, 1974, Manges, his wife, and Duval County Ranch Company executed a deed of trust securing a note in the principal amount of $7,028,346 held by the Bank of the Southwest National Association. This deed of trust covered, among other mineral interests, "all of the oil, gas and other mineral interests ... including ... executive rights and powers" owned or claimed by Manges and affecting lands in Starr and Jim Hogg counties.

On September 11, 1974, Manges, his wife and Duval County Ranch Company executed two instruments to Gas Producing Enterprises. One of the instruments was an option to purchase oil and gas and the other was a "Repayment Agreement, Collateral Assignment and Security Agreement." These instruments covered the mineral interest Manges purchased from the Guerras plus other properties owned by Manges in a total of thirteen Texas counties. The option contract purported to give Gas Producing Enterprises the right to purchase oil and gas produced from all of the mineral estates to which Manges held executive rights. The Gas Producing Enterprises contracts were executed in connection with a loan from Gas Producing Enterprises to Manges of $2,800,000 (later increased to $5,000,000). Manges was to use this money in drilling and developing the mineral interests. Neither contract required Manges to drill and develop the Guerra lands in particular.

J.C. Guerra sued Manges, Gas Producing Enterprises, the Bank of the Southwest, and Cove Investments, Inc., in Jim Hogg County, contending that these instruments effectively withdrew the Guerra minerals from the lease market. The other Guerras were made involuntary plaintiffs. R.R. Guerra filed a similar suit as a cross-action on the same day in Starr County. Cove Investments, Inc., intervened in the Starr County suit, claiming title to all, or alternatively, one-half of the minerals and executive rights owned by Manges. The controversy between Manges and Cove Investments was severed for a separate trial. *See Cove Investments, Inc. v. Manges*, 602 S.W.2d 512 (Tex.1980). Cove Investments, Inc., and R.R. Guerra filed notices of *lis pendens* on October 2, 1974, and September 19, 1975, respectively.

After the Guerras filed this suit, Manges discovered that Exxon had drilled wells on an adjoining tract which were draining the Guerra/Manges minerals. Manges, claiming that he was unable to lease to anyone else because of the *lis pendens* notices, leased 25,911.62 acres to himself on April 20, 1977. This lease was for a term of ten years, and provided for a one-eighth royalty and a $2 per acre annual delay rental. The lease recited a $5 bonus for the entire acreage. Purporting to act under the Manges-to-Manges lease, Manges drilled five offset wells, three of which were producing, and at the time of trial had produced over $2,000,000. Manges claimed at trial his proportionate 53.4 percent of the one-eighth royalty and 100 percent of the remaining seven-eighths of the production revenue. This money has been held in a suspense account.

On July 16, 1977, Manges, as lessee under the Manges-to-Manges lease, entered into a farm-out agreement with Joe Schero

covering the same land as the Manges-to-Manges lease. Manges was to receive, in addition to his fractional share of the one-eighth royalty, a fifty percent working interest free of drilling costs. On the same day the farm-out agreement was executed, Manges gave Schero a "top lease," which was conditional on the Manges-to-Manges lease being declared void. Under the farm-out, Schero drilled an additional sixteen to eighteen other wells, all of which were nonproducing.

Trial was to a jury. The jury was instructed that:

the possessor of an "Executive Right" as herein defined owes to the co-mineral owners the same degree of diligence and discretion in exercising the rights and powers granted under such Executive Rights as would be expected of the average land owner who because of self-interest is normally willing to take affirmative steps to seek or to cooperate with prospective lessees ... that in the exercise of the executive rights, the holder thereof is required to use utmost good faith and fair dealing as to the interest of the non-executive mineral interest owners. You are further instructed that the holder of the executive rights has a duty to prevent drainage of oil or gas from any lands covered by the executive rights. In any lease executed by the holder of the executive rights, the holder thereof is required to obtain all benefits that could be reasonably obtained from a disinterested third party.

Neither party objected to the instruction. The jury found that Manges had breached the duty he owed the Guerras as holder of the executive rights to their minerals covered by the June 11, 1974 agreed judgment and the six-sevenths of the Virginia C. Guerra minerals that he did not acquire by that judgment. Based on the jury findings, the trial court rendered judgment (1) removing Manges as holder of the executive rights to the Guerras' mineral interests; (2)

cancelling the Manges-to-Manges lease as of the date of its execution (April 20, 1977); (3) adjudging Manges to be a drilling and producing co-tenant with the Guerras in three producing wells and two dry holes drilled by him; (4) requiring an accounting by Manges of income from production from the producing wells, less necessary and reasonable costs of drilling and production; (5) awarding the Guerras actual damages against Manges of $382,608.79 plus $500,-000 exemplary damages; (6) adjudging the Bank of the Southwest National Association deed of trust to be of no force or effect insofar as it purported to cover the Guerras' mineral interests and executive rights;[1] and (7) cancelling the two Gas Producing Enterprises contracts insofar as they purported to cover the Guerras' mineral interests and executive rights. Manges appealed and the court of civil appeals affirmed the judgment of the trial court.

The duty of utmost good faith owed by an executive has been settled since *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 545 (1937). That standard has been repeated in *First National Bank of Snyder v. Evans*, 169 S.W.2d 754, 757 (Tex. Civ.App.—Eastland 1943, writ ref'd); *Kimsey v. Fore*, 593 S.W.2d 107, 111 (Tex.Civ. App.—Beaumont 1980, writ ref'd n.r.e.); *Portwood v. Buckalew*, 521 S.W.2d 904, 911 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); and *Morriss v. First National Bank of Mission*, 249 S.W.2d 269, 276 (Tex. Civ.App.—San Antonio 1952, writ ref'd n.r. e.). The fiduciary duty arises from the relationship of the parties and not from the contract. *See English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex.1983) (Spears, J., concurring). While a contract or deed may create the relationship, the duty of the executive arises from the relationship and not from express or implied terms of the contract or deed. That duty requires the holder of the executive right, Manges in this case, to acquire for the non-executive every benefit that he exacts for himself.

1. The Bank announced in open court that it no longer contended its mortgage covered the min-

eral interests claimed by the Guerras.

R. Hemingway, *The Law of Oil & Gas*, § 2.2(D) (2d ed. 1983).

In our opinion Manges' conduct amounted to a breach of his fiduciary duty as found by the jury in making the lease to himself, in agreeing upon a $5 nominal bonus for 25,911.62 acres of land, and in dealing with the entire mineral interest so that he received benefits that the non-executives did not receive. His taking one hundred percent of seven-eighths of the three producing wells, his taking one-half of the working interest, free and clear of costs, by .his farm-out to Schero, was also the receipt of special benefits that the non-executives did not receive. Upon the basis of his receipt of special benefits, we must cancel the lease as we did in *State v. Standard*, 414 S.W.2d 148 (Tex.1967). In *Standard* we held that the surface owner, as the exclusive agent for the state in the execution of an oil and gas lease under the Relinquishment Act, could not reserve the right to acquire for himself at a later time a one-sixteenth share of the working interest, when the state was not accorded an equal right. *Id.* at 153. The Manges-to-Manges lease was correctly cancelled.

It does not follow, however, that Manges must be removed as the executive. The Guerras elected not to cancel the executive rights even though the jury found that they had been fraudulently induced to sell their lands. Their motion for judgment stated:

> The Plaintiffs have elected, and now elect not to rescind the initial transfer to the defendant, Clinton Manges, of the executive rights to their interest in the mineral estate in the Guerra lands, as the same may be authorized by the jury's answers to Special Issues Nos. 2, 3, 4 and 4a, and elect instead to take the damages as found by the jury.

Having elected to waive their right to rescind the transfer of executive rights so they would recover damages, they will not be permitted to urge that the executive right should be cancelled. The Guerras elected to take the damages related to Manges' failure to lease Guerra lands that were not included in the Manges-to-Manges lease. The jury found that Manges could have leased those lands to a third party but did not, and that the damages for his failure to lease amounted to $800,000 in lost bonus and $120,000 in lost delay rentals. The findings are supported by evidence as found by the court of appeals. We have no power to set aside the court of appeals' findings of factual sufficiency, and there is some evidence that supports the findings. The Guerras, as owners of 46.6 percent of the minerals, are legally entitled to receive their proportionate 46.6 percent of those damages as held by the judgments below.

The Guerras brought suit for recovery of damages, actual and exemplary, for Manges' breach of his fiduciary duty. Recovery against a breaching fiduciary is not limited to an accounting of profits received by the fiduciary, but can also include exemplary damages. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 510 (Tex. 1980); *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex.1963). This is in contrast to a suit for breach of contract, which will not support a judgment for exemplary damages even if the agreement is maliciously breached. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981). The Guerras' suit was based upon a breach of an executive's fiduciary duty, and not the breach of an implied covenant to a contract, as in *Amoco*.

Based upon the actual damages and the jury findings, the Guerras are entitled to recover exemplary damages. The jury found that Manges had willfully disregarded the rights of the Guerras in several specific ways, including his failure to negotiate for mineral leases with third persons, that Manges' actions were in willful and unconscionable disregard of the interests of the Guerras, that the conduct was malicious or wanton, and that the Guerras should receive as punitive damages the sum of $500,000. Manges did not breach a contract; rather, as the jury found, he willfully, wantonly, maliciously and uncon-

scionably breached his fiduciary duty. We affirm the judgment on the verdict for punitive damages.

After this court rendered its judgment in this cause, the Guerras filed motions that three of the justices be recused. Each of the justices is qualified under Article V, Section 11, of the Texas Constitution to serve. Prior to any further proceedings in the case and in compliance with the provisions of Rule 18b of the Texas Rules of Civil Procedure, each challenged justice certified the matter to the entire court. The court then decided the motions by a vote of the justices of the court sitting en banc, except that the challenged justice did not sit when his challenge was considered. The court has concluded that each motion to recuse should be and is denied. Another justice who did not participate in the original decision has participated on rehearing. *See Sun Oil Co. v. Whitaker*, 483 S.W.2d 808 (Tex.1972).

We reverse that part of the judgment of the courts below that removed Clinton Manges as the holder of the executive rights on behalf of the Guerras. We affirm the remaining parts of the judgments below.

RAY, J., notes his dissent.