**COMANCHE LAND AND CATTLE COMPANY, INC.**

**v.**

**Samuel Frank ADAMS et al.**

**No. 11–84–177–CV.**

Court of Appeals of Texas, Eastland.

April 4, 1985.

Rehearing Denied May 2, 1985.

Randall Schmidt, Brown, Herman, Scott, Dean & Miles, Fort Worth, for appellant.

Lynn Nabers, Austin, Jim Parker, Comanche, for appellees.

McCLOUD, Chief Justice.

The issue is whether the owner of the leasing rights to a mineral estate has violated a duty owed to the owner of a term nonparticipating royalty interest.

In a deed dated February 17, 1964, the grantors[1] conveyed approximately 180 acres of land to Comanche Land and Cattle Company, Inc. The deed contains a royalty reservation which provides:

The grantors herein reserve unto themselves a one-half royalty interest on all royalties that might be paid on oil, gas and other mineral *leases* that might be made on said land for a period of twenty years from the date of this deed and at which time said royalty interest will pass to the then owners of the land. (Emphasis added)

On March 13, 1976, Comanche Land and Cattle Company, Inc., owner of all mineral rights in the 180-acre tract, except the above reserved term royalty interest, entered into a joint venture "oil and gas mining agreement" with Corpening Enterprises. Pursuant to the agreement, two producing gas wells were completed on the tract.

The trial court held that Comanche, which had the exclusive right to enter into oil and gas leases on the property, is liable to plaintiffs for one-half of a one-eighth royalty on the gas produced from the 180-acre tract. The trial court entered judgment in favor of plaintiffs for $37,308.89 plus interest and attorney's fees. Comanche Land and Cattle Company, Inc. appeals. We affirm.

The thrust of Comanche's argument is that the joint venture oil and gas mining agreement is not a "lease," and that the reservation only reserves an interest in royalties "that might be paid on oil, gas and other mineral leases." Comanche also urges that it breached no duty owed to plaintiffs.

The Comanche-Corpening mining agreement obligated Corpening to drill an initial well on property other than the tract in issue. The agreement states that in the event the first well was successful, Corpening would be obligated to drill the second well on the tract in question. The agreement provides:

If the first well is a "successful" well, this second well is obligatory. If the second well is completed as a producer, there will be a payout period to allow Corpening to recoup his actual cost of acquiring, drilling and equipping the well, plus operating costs of this second well paid by Corpening. *During the payout period, Comanche will be a co-owner of the eight-eights (⁸⁄₈ths) working interest (no royalty)* to the extent of a fraction in which the numerator shall be Six Thousand One Hundred Ninety-Five Dollars ($6,195.00)—Twenty-Five Dollars ($25.00) times 247.8—and the denominator shall be the actual cost of drilling and equipping the well. After payout, Comanche and Corpening Enterprises, its successors and assigns shall own the eight-eights (⁸⁄₈ths) working interest equally as long as there is production from this tract. (Emphasis added)

The "mining agreement" expressly provides that during the payout period, Comanche will be a co-owner of the "eight-eights (⁸⁄₈ths) working interest (no royalty)."

 We agree with Comanche that the mining agreement is not a "lease" and that it explicitly provides that there is "no royalty" payable pursuant to the agreement. This does not, however, relieve Comanche, owner of the executive right, of its duty of utmost good faith toward the owners of the royalty interest.

Our Supreme Court in the recent case of *Manges v. Guerra,* 673 S.W.2d 180 (Tex. 1984), reaffirmed the rule that the duty of

---

1. The plaintiffs and cross-plaintiffs, hereinafter referred to only as plaintiffs, are the grantors and heirs of grantors in the deed: Samuel Frank Adams, Individually and as Administrator of the Estate of Tomie Lou Adams, Lem R. Carter, Johnnie Carter Norwood, Gene Carter, Charles Carter, Ruby Loftis, Steve Adams, Allene Carter, Larry L. Carter II, Brian N. Carter, Bruce A. Carter, Alice Carter, Bradley W. Carter, Barbara L. Henry, and Kathy McGallian.

the executive (the one holding the right to enter into an oil and gas lease) arises from the relationship of the parties and not from the express or implied terms of the deed. The court stated:

> The duty of utmost good faith owed by an executive has been settled since *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 545 (1937). That standard has been repeated in *First National Bank of Snyder v. Evans*, 169 S.W.2d 754, 757 (Tex.Civ.App.—Eastland 1943, writ ref'd); *Kimsey v. Fore*, 593 S.W.2d 107, 111 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Portwood v. Buckalew*, 521 S.W.2d 904, 911 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); and *Morriss v. First National Bank of Mission*, 249 S.W.2d 269, 276 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.). The fiduciary duty arises from the relationship of the parties and not from the contract. See *English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex.1983) (Spears, J., concurring). While a contract or deed may create the relationship, the duty of the executive arises from the relationship and not from express or implied terms of the contract or deed.

The evidence shows that before the mining agreement was signed, Comanche, through its president, had personal notice of the royalty reservation. There is evidence that Comanche could have entered into an oil and gas lease containing a one-eighth royalty provision.

■ The trial court concluded from the evidence that Comanche violated the duty of "utmost good faith." Indeed, the mining agreement is unmistakably worded so as to preclude any royalty payment. Since there are no findings of fact, we must presume that the trial court found from the evidence that rather than exercising utmost good faith, the owner of the executive right purposely entered into an agreement that was calculated to defeat the rights of the royalty owners.

■ Plaintiffs, by cross-point, urge that we should reform the trial court's judgment and award them damages of "one-half (½) of one-half (½) of the net production" from the property. Any complaint which plaintiffs might have had has been waived because they did not except to the judgment, give notice of appeal, or in any other way inform the trial court that they were dissatisfied with the judgment entered. *Western Construction Company v. Valero Transmission Company*, 655 S.W.2d 251 (Tex.App.—Corpus Christi 1983, no writ).

The points and cross-point of error are overruled. The judgment of the trial court is affirmed.