DEARING, INC. and Royal Petroleum Corporation, Appellants,

v.

James M. SPILLER, Mary Elizabeth Cook, Evelyn Curtis, Y.E. Douglass, Jeanne M. Douglass, H.A. Douglass, Frank E. Douglass, Edmond Haag, Jr., Herschell L. Haag, III, Merwin Haag, Individually, and Merwin Haag, as Trustee of Trust B Under the Will of Velma Caldwell Haag, Deceased, Oliver Haag, Addilese Thomas, Individually, and Addilese Thomas, as Trustee of Trust A Under the Will of Velma Caldwell Haag, Deceased, and Phyllis Wright, Appellees.

No. 2-91-107-CV.

Court of Appeals of Texas, Fort Worth.

Feb. 5, 1992.

Rehearing Denied March 10, 1992.

The Montgomery Law Firm, P.C., and Elton M. Montgomery, Graham, for appellants.

Sewell and Forbis, James E. Forbis and Christopher N. Forbis, Decatur, for appellees.

Before JOE SPURLOCK II, HILL and DAY, JJ.

## OPINION

DAY, Justice.

Defendants Dearing, Inc. and Royal Petroleum Corporation appeal from an adverse judgment based upon jury findings that they breached their duty of utmost good faith. Plaintiffs sought, and were awarded a variety of damages, including exemplary damages against both defendants. We affirm.

In 1943, a 600–acre tract of land owned by the Haag family was conveyed to R.H. Dearing & Sons. The deed conveyed the property in its entirety to Dearing but reserved to the Haags an undivided ½ interest in the minerals. The lease also granted Dearing the exclusive right to execute leases on the minerals provided that the royalty reserved was "no ... less than the usual one eighth (⅛) royalty." Dearing is the successor in interest to R.H. Dearing & Sons, and appellees, plaintiffs below, are successors in interest to the Haag family.

In 1944, Dearing exercised its executive leasing rights and entered into an oil and gas lease with Shell, said lease providing for a ⅛ royalty. The lease covered the entire 600–acre tract. By 1980 production had reached a virtual standstill on this land. The only well left producing was the "Old Spaeth Well" on a 20–acre tract. Because of the lack of a Pugh[1] clause, production from this one well held the entire 600–acre tract and prevented the Shell lease from terminating.

By the early 1980s, the area in which the 600 acres was located became "hot" for mineral development by reason of the discovery of a new formation in the area. In 1981, Dearing had received a written offer from World Producers, to lease the 600 acres (within 120 days of the land becoming available for lease) for a 3/16 royalty and bonus payments of $35 an acre. Unfortunately, the old Spaeth well was still producing and keeping the Shell lease alive on the entire 600 acres. Dearing then began negotiating to purchase the old Spaeth well

1. A continuous development clause, or Pugh clause, provides that drilling operations on, or production from, pooled units shall maintain the lease only as to the lands that are included in such producing unit(s).

and ultimately purchased it for $150,000. Dearing then stopped production on the Spaeth well which "killed" the old Shell lease on the 600 acres.[2]

After the Shell lease expired, Dearing received a written offer from Max Poynor who offered to lease the property for a royalty of ¼ and bonus payments of $100 an acre. This offer also included a continuous drilling clause (so that wells would have to be drilled periodically or the lease would expire as to all land not included in a producing unit). In 1982 Dearing leased the 20 acres upon which the Spaeth well was located as well as the remaining 580 acres to themselves by executing a mineral lease to Royal Petroleum Corporation, another Dearing family corporation.[3] The "insider" leases provided for no bonuses, only a ⅛ royalty and the larger lease contained no Pugh clause or continuous drilling clause even though the lease covered 580 acres. Herman Dearing, president of both corporations, admitted that he did not make any effort to lease the property to anyone else, explaining that he wanted to "keep it in the family."

Appellees, plaintiffs below, brought suit against Dearing and Royal seeking actual and exemplary damages for the breach of the duty of utmost good faith, cancellation of the leases between Dearing and Royal, termination of Dearing's executive leasing rights over the mineral interests owned by plaintiffs, and for an accounting of the profits made under the Dearing/Royal leases.

By their verdict, the jury found: Dearing breached its duty of utmost good faith to the plaintiffs by leasing to Royal Petroleum Corporation; the Dearing/Royal leases were acts of self-dealing on the part of such corporations; family corporations in entering into the leases were conspiring to deprive the plaintiffs of benefits they would have received in a lease to a disinter-

ested party; and the acts of Dearing and Royal were malicious, wanton, and in willful and unconscionable disregard of the rights and interests of plaintiffs. The jury assessed exemplary damages of $300,000 against each of the defendants.

The judgment entered on the jury's verdict provides for the cancellation of the Dearing/Royal leases, cancellation of the executive rights of Dearing over mineral interests of the plaintiffs, and the establishment of the plaintiffs as co-tenants of Dearing with respect to the production on the premises. The judgment also ordered an accounting with respect to all of the production and expenditures incident to the development of the premises through the Dearing/Royal lease; and after such accounting reduced the claims to a fixed dollar amount, the judgment further apportioned the revenues, less the applicable costs of development, to the appropriate parties. Finally, the judgment awarded the plaintiffs $300,000 in exemplary damages from each defendant.

In fourteen points of error, defendants Dearing and Royal bring this appeal. Essentially, their complaint can be broken into three parts, and this is how this court will address their appeal. First, does the case of *Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984), permit the recovery of damages in a case such as this when there is no explicit duty of "utmost good faith" specified in the original deed? Second, if *Manges* does apply, was the duty of Dearing fully discharged by entering into a lease which granted the bare terms of the 1944 deed, although leases which covered the surrounding property were entered into on far more favorable terms? Finally, was the judgment of the trial court a final judgment disposing of all parties and all issues?

---

**2.** The plaintiffs were never notified of Dearing's negotiations in connection with "killing the Shell lease and freeing up the 600 acres for mineral exploration." Although the plaintiffs owned ½ of the minerals, they were not given the opportunity to share in the cost of purchasing the Spaeth well.

**3.** Both Dearing and Royal Petroleum Corporation have an identity of officers, directors and shareholders. Both also share the same business address, phone number and are engaged in the ownership and development of minerals.

*Applicability of Manges v. Guerra*

■ Texas courts have generally accepted the standard of "utmost good faith" to apply to one who exercises executive rights to lease or develop minerals. *Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543, 545 (Tex.Comm'n.App.1937, opinion adopted). This is a more stringent standard than simple good faith but has generally been considered one step below a true fiduciary obligation.[4]

However, the Texas Supreme Court's decision in *Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984) used the terminology of "utmost good faith" and specifically equated that standard with a fiduciary obligation. Based upon the violations of the utmost good faith standard, the court in *Manges* upheld an award of exemplary damages. *Id.*

Appellants claim that the "facts in *Manges v. Guerra* are thousands of miles or light years removed from the facts of the instant case." From our reading of the facts, it would be difficult to determine how a fact situation could be more analogous to the first cause of action in the *Manges* case.

In *Manges,* the plaintiff was a mineral co-tenant with the defendant who held the executive rights over all the property. The property ownership in this case is identical. In *Manges,* the only limitation on the executive right was that no lease could be entered into that provided for less than a ⅛ royalty. The pertinent language in the case at hand is identical. In *Manges* the defendant did not breach the terms of the original lease, but merely did not obtain terms as favorable as could have been obtained from a disinterested party. In the case at hand, at least two parties made offers substantially better than the lease entered into by Dearing and Royal. In *Manges,* the Texas Supreme Court held that under these facts, the holder of the executive right had breached the duty of utmost good faith. *Id.* In this case, the trial court properly entered judgment on

the jury's verdict that Dearing breached its duty of utmost good faith by entering into a lease with an "inside" party. Appellants' points of error one through four are overruled.

*Breach of the Duty of "Utmost Good Faith"*

■ As we have determined that the *Manges* standard of "utmost good faith" applies, we must next answer whether the actions of Dearing were in derogation of this duty. Appellants focus on the fact that the 1943 lease did not specify the duty of utmost good faith, and thus they are not bound by this standard. This contention is in patent disregard of the law.

Because the non-participating royalty owner must depend upon the mineral fee owner for the enjoyment of his interests, the courts have implied a covenant of the utmost fair dealing in the exercise of the executive rights to lease or develop the minerals. *Schlittler,* 101 S.W.2d at 545.

■ A mineral fee owner has a possessory estate in the land. As such he has the exclusive power to lease the land to another for mineral development or to develop the minerals himself. *Elick v. Champlin Petroleum Co.,* 697 S.W.2d 1, 3–4 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). On the other hand, a non-participating royalty owner has no possessory estate in the land, and hence, no right to lease the land to another for mineral development, nor does he have the right to produce the minerals himself. *Martin v. Schneider,* 622 S.W.2d 620, 622 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ In *Pickens v. Hope,* 764 S.W.2d 256 (Tex.App.—San Antonio 1988, writ denied), the court of appeals distinguished *Manges* on the basis that in *Pickens* there was no duty to manage the non-participating royalty interest because the amount of that royalty was specifically set out as ¼ and could not be altered. However, in *Manges,* the executive rights holder had a duty to manage the interest by obtaining

---

**4.** Incidentally, we note that the *Schlittler* case was decided in 1937—seven years before the original deed in this case. Thus, even at the

time the initial conveyance was made to Dearing, he, as executive, owed the "utmost good faith" to the Spiller/Haag group.

the highest royalty possible and was prohibited from self-dealing. *Manges,* 673 S.W.2d at 181–82. The court reached this determination from the language of the deed which specified that no royalty less than ⅛ was acceptable. Unlike *Pickens,* the present lease does not have or require a fixed royalty. Instead, it contains the *Manges* language calling for a royalty of no less than ⅛. Thus, the entire percentage return is left to the efforts of the executive. We hold that as the language in the Haag/Dearing deed is the same as the language in the *Manges* deed, Dearing had a duty to manage the executive interest by obtaining the highest royalty possible, and was likewise prohibited from self-dealing. Consequently, we hold that this duty was breached when the lease he awarded himself did not provide for at least the fair market royalty prevalent in the surrounding area at that time.

The present case is analogous to *Comanche Land and Cattle Co. v. Adams,* 688 S.W.2d 914 (Tex.App.—Eastland 1985, no writ). In that case, the non-participating royalty interest was set at ½ of the royalty interest obtained by the executive rights holder. In *Comanche Land,* the court followed the *Manges* decision, quoting the language from that opinion which stated that the executive rights owner owed a duty of utmost good faith to the non-participating royalty owner. *Id.*

The court in *Comanche* noted that the facts in *Manges* once again were analogous to the facts in that case insofar as the non-participating interest owners in *Manges* were also co-tenants with the executive rights owners, and Manges' management determined not only the amount of royalties received by these non-participating interest owners but also the amount of bonus and delay rentals. The fact that the non-participating interest owners were co-tenants with Manges did not create the fiduciary relationship in the absence of an agreement or contract providing for such. Instead, the significant relationship which gives rise to the fiduciary duty is the *exercise* of the executive rights over the non-participating interest. The court in *Co-*

*manche* held that this duty should apply when the executive controls only the amount of the royalty just as it does when the executive controls both the amount of the royalty interest and the bonus and delay rentals. *Id.* However, our case is not even as far afield from *Manges.* Here, Dearing controlled not only the royalty interest, but the payment, if any, of bonuses and delay rentals. Indeed, Dearing was the only party who held the right to develop the land at all. Clearly, when Dearing exercised this right, the duty imposed upon him was that of utmost good faith. The fact that Dearing was co-tenant with the plaintiffs is irrelevant to a determination of the duty owed by an executive. If Dearing owned no interest in the land, and only owned the executive rights on the property, this duty would still be imposed.

Generally, where a party having executive leasing privileges enters into a transaction in which he and the non-executive mineral holders are both interested, and the executive is authorized to act for both parties, he must exact for the non-executive every benefit that he exacts for himself. If he could obtain overriding royalties or cash bonuses for the non-executive and himself, it was his duty to have done so. *Portwood v. Buckalew,* 521 S.W.2d 904, 912–14 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.) (citations omitted).

The court in *Mims v. Beall,* 810 S.W.2d 876, 879 (Tex.App.—Texarkana 1991, no writ) further held that when the standard is one of fiduciary obligation, any self-dealing is prohibited. Even if the duty of the executive does not rise to the unequivocal level of fiduciary, we agree with the *Mims* court that this rule should extend to the exercise of an executive power. An executive is forbidden from self-dealing through spouses, children (as was the case in *Mims*), agents (including, as here, closely held corporations), employees, and all others whose interests are closely identified with those of the fiduciary. *Id.*

Appellants argue that because they relied on the advice of counsel in choosing their course of action, they have not breached any duty. We disagree. The

principal testimony relied upon by the appellant in *Portwood* to raise the issue of "utmost fairness" was the executive's own testimony wherein she testified she relied upon the advice of her attorney and believed she was authorized to take the royalty as compensation for surface damages. As that court viewed it, the evidence relied upon by appellant constituted nothing more than a self-serving denial merely denying that she breached her obligation to deal with the other co-tenants in utmost fairness. *Portwood*, 521 S.W.2d at 914.

Appellants rely on *Pickens*, 764 S.W.2d at 263–65 for the proposition that Dearing owed no fiduciary duty to the Haag successors. However, *Pickens* is distinguishable in that there was no co-tenancy with regard to the minerals. The relationship was merely that of fee mineral owner and non-participating royalty owner. Pickens was charged with the failure to lease or develop his own property, and he had not been entrusted with the executive management of royalties belonging to Hope. Pickens, as 100% owner of the mineral estate, was the executive as a matter of law, and not because of a special relationship undertaken to manage the royalty belonging to another, as was the case in *Manges*, and as is the case here.

▅▅▅ We do not mean to imply that an executive is barred, as a matter of law, from developing the premises himself. However, when the market value of a lease is so much greater than the terms the executive grants to himself, this is clear evidence of a breach of his duty of utmost good faith. Appellants' points of error five through nine are overruled.

In points of error ten through twelve, appellants complain that there were no pleadings, proof, or jury findings to support an award of exemplary damages.

▅▅▅ In *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502 (Tex.1980), the court held that an award of exemplary damages is proper against a fiduciary who has been guilty of unfair self-dealing. The malicious breach of a fiduciary duty will support an award of exemplary damages. *Manges*, 673 S.W.2d at 194. It is necessary to allege, prove, and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damages. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 409 (1934).

In their original petition, plaintiffs requested an award of punitive damages in the amount of $500,000 from each defendant.

▅▅▅ Furthermore, there was evidence here from which a jury could conclude that the breach was malicious. Dearing himself testified that he was not interested in leasing the land to an outside party; he wanted to "keep it in the family," apparently regardless of how this would affect the rights of the non-participating royalty holders' interests.

▅▅▅ Even though there were pleadings and evidence to support this award, punitive damages are not recoverable absent an award of actual damages. When a distinct, willful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages, but even in that instance the complainant must prove that he suffered some actual damages. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 564 (Tex.1981). Punitive damages must bear a reasonable proportion to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 909 (Tex.1981). Punitive damages must be contingent upon a finding of actual damages since actual damage is a necessary element of the underlying tort upon which the punitive damages are based. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903–04 (Tex.1985). Although the judgment did not provide for actual damages in a sum certain, this is not tantamount to a judgment of "no damages." The trial court ordered the damages due the plaintiffs be determined through an accounting of all expenses and revenues since the date of the new lease. This relief was in addition to equitable relief of rescission of the lease and cancellation of Dearing's executive leasing rights. Points of error ten, eleven and twelve are overruled.

*Finality of the Judgment*

Finally, appellants contend that the judgment (from which they have taken appeal) is not a final judgment disposing of all parties and all issues. Prior to trial, appellants filed a counterclaim in the trial court for an equitable lien on the proceeds of the new wells sufficient to cover Dearing/Royal's costs of production, and for partition of the interests. The action for partition of the interests was severed out and is pending in the trial court. The judgment provided for an accounting of all expenses and revenues since the date of the Dearing/Royal lease; and after such accounting reduced the claims to a fixed dollar amount, the judgment further apportioned the revenues, less the applicable costs of development, to the appropriate parties.

Appellants contend that because the judgment ordered an accounting and other ministerial acts, this judgment is not final. A judgment is not interlocutory merely because it orders an accounting. *Ferguson v. Ferguson*, 161 Tex. 184, 338 S.W.2d 945, 947 (1960). The finality of this judgment is not displaced, despite the fact that it calls for an accounting from Royal. Point of error thirteen is overruled.

Appellants further contend that if the judgment is final, the trial court abused its discretion in severing the defendant's claims for partition. We disagree.

Severance of a counterclaim may be proper if it is part of a controversy which involves more than one cause of action. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525–26 (Tex.1982). The trial court has broad discretion in severing or consolidating causes. *McGuire v. Commercial Union Ins. Co. of N.Y.*, 431 S.W.2d 347 (Tex.1968). No abuse of discretion occurs when a court severs a claim for partition or reformation from an original action seeking a declaration of the rights of the parties under a deed. *Cherokee*, 641 S.W.2d at 526. As a co-tenant with the plaintiffs, even if there were no controversy regarding the exercise of the executive right, Dearing was entitled, as a separate and distinct cause of action, to bring a partition suit. Thus, this counterclaim was a distinct cause of action, and the trial court did not abuse its discretion by severing this action for later trial. Appellants' fourteenth point of error is overruled.

The judgment of the trial court is affirmed.