Hlavinka v. Hancock










 


NUMBER 13-01-00209-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOSEPH C. HLAVINKA, JR., ET AL., Appellants,


v.



JOE BRUCE HANCOCK, JR., ET AL., Appellees.

 


On appeal from the 23rd District Court of Wharton County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Hinojosa and Rodriguez


Opinion by Justice Hinojosa



 Appellees, (1) non-executive mineral interest owners, sued appellants, Joseph C.
Hlavinka, Jr., Terrance Hlavinka, and Kenneth Hlavinka ("the Hlavinkas"), owners of the
executive and surface rights of an 802.25 acre tract of land located in Wharton County for
breach of fiduciary duty. In three issues, the Hlavinkas contend: (1) the evidence is legally
and factually insufficient to support the jury's finding of liability; (2) the evidence is legally
and factually insufficient to support the jury's finding of damages; and (3) the trial court
erred in its instructions to the jury. We reverse and render.

A. Background and Procedural History


 In February 1996, the Hlavinkas purchased the 802.25 acre tract of land for farming
operations. The property was once part of a 4,000 acre tract owned by the Northington
family. In addition to the surface, the Hlavinkas received a one-ninth mineral interest and
the executive rights to the 802.25 acre tract. Collectively, appellees own approximately
sixty percent of the mineral interest in the subject property, making them co-tenants in the
mineral estate with the Hlavinkas.

 In 1996 and 1997, there was significant activity in the oil and gas market in the
Wharton County area. In late 1996, Craig Charbonnet, an independent landman hired to
negotiate oil and gas leases on behalf of Adobe Energy, Inc., began contacting several of
the surrounding landowners. Charbonnet contacted John Wynn, who controlled the
surface and executive rights to a 1,376 acre tract out of the old Northington tract; Peggy
Manske, who controlled the executive rights to a 274 acre tract between the Wynn and
Hlavinka tracts; and appellant Joseph C. Hlavinka, Jr. with regards to the 802.25 acre tract. 
Charbonnet initially offered Wynn a three-year paid-up lease for $150.00 per acre and a
one-fifth royalty. After refusing this offer, Wynn successfully negotiated a three-year lease
paying a $250.00 per acre bonus, with delay rentals of $50.00 per year for the second and
third years, and a one-fourth royalty interest. Manske also negotiated and signed a lease
identical to Wynn's.

 When approached with an offer of a three-year, paid-up lease for $175.00 per acre
and a one-fifth royalty, the Hlavinkas resisted, seeking more money. (2) The Hlavinkas
discovered that other landowners in the area were being paid more than was offered to
them and more than was paid to Wynn. One neighbor, Harry Goudeau, received a lease
of $600.00 per acre, with a $450.00 per acre bonus and delay rentals of $75.00 per acre
in the second and third years. The Hlavinkas believed the 802.25 acre tract should lease
for more money, in the range of $600.00 to $1300.00 an acre.

 In January 1997, Charbonnet sent the Hlavinkas a letter offering a three-year lease
paying a $250.00 per acre bonus, with delay rentals of $50.00 per year for the second and
third years, and a one-fourth royalty interest. The letter provided that the offer would expire
in five days, if it was not accepted. The Hlavinkas did not respond to the offer.

 In September 1997, David Wolda, Charbonnet's associate, made a subsequent
offer of a three-year lease paying a $250.00 per acre bonus, with delay rentals of $25.00
per year for the second and third years, and a 22.5 percent royalty interest. This offer,
lower than the previous offer, was declined by the Hlavinkas.

 In early 1998, seismic work was being conducted in the area. Coastal Oil & Gas
Corporation, working with Adobe, attempted to get a permit to conduct seismic operations
on the Hlavinka property. The Hlavinkas initially resisted, seeking instead to have the
property leased at $650.00 per acre. After appellees demanded that the 802.25 acre tract
be included in the seismic shoot, the Hlavinkas agreed to allow seismic operations on the
property. The Hlavinkas received $40.00 per acre for surface damages and disruption of
their farming operations.

 Appellees subsequently sued the Hlavinkas. They alleged that the Hlavinkas had
breached their fiduciary duties by: (1) ignoring significant offers to develop the minerals;
(2) refusing to negotiate in good faith; (3) ignoring conflicts of interest; (4) withholding
material information and/or giving false, misleading, or deceptive information; and (5)
engaging in self-dealing. The jury found against the Hlavinkas and found damages in the
amount of $187,195.65. After the trial court signed the judgment, the Hlavinkas filed this
appeal.

B. Sufficiency of the Evidence


 In their first issue, the Hlavinkas contend the evidence is legally and factually
insufficient to support the jury's finding of liability.

1. Standard of Review


 When a party without the burden of proof complains on appeal of a jury finding, the
appropriate issues are that there is "no evidence" or "insufficient evidence" to support the
jury finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

 When we review a legal sufficiency or "no evidence" issue, we must view the
evidence in a light that tends to support the finding of the disputed fact and disregard all
evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.
2001). A no evidence issue will be sustained when the record discloses that: (1) there is
a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence
conclusively establishes the opposite of the vital fact. Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). If there is more than a scintilla of evidence to support
the finding, the no evidence challenge fails. BMC Software Belg., N.V. v. Marchand, 83
S.W.3d 789, 795 (Tex. 2002). When the evidence offered to prove a vital fact is so weak
as to do no more than create a mere surmise or suspicion of its existence, the evidence
is not more than a scintilla and, in legal effect, is no evidence. Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists where the
evidence supporting the finding, as a whole, rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions. Havner, 953 S.W.2d at 711.

 When we review a factual sufficiency or "insufficient evidence" issue, we consider,
weigh, and examine all of the evidence which supports or undermines the finding of the
trier of fact. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We then set aside the finding only when we determine that the evidence standing alone
is too weak to support the finding or that the finding is so against the overwhelming weight
of the evidence as to be manifestly unjust and clearly wrong. Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

2. Duty of Executive to Non-Executive Mineral Interest Owner


 Texas courts have generally held that the standard of "utmost good faith" applies
to one who exercises executive rights to lease or develop minerals. See Schlittler v. Smith,
128 Tex. 628, 101 S.W.2d 543, 545 (1937); Luecke v. Wallace, 951 S.W.2d 267, 274 (Tex.
App.-Austin 1997, no writ); see also Ernest E. Smith, Implications of a Fiduciary Standard
of Conduct for the Holder of the Executive Right, 64 Tex. L. Rev. 371, 372 (1985). The
duty of utmost good faith requires the executive right holder to execute the same type of
oil and gas lease on the same terms as he would have done in the absence of an
outstanding, nonparticipating interest in a third party. See 1 Ernest E. Smith & Jacqueline
Long Weaver, Texas Law of Oil and Gas § 2.6(F), at 70-71 (1997).

 In 1984, the Texas Supreme Court couched the duty of "utmost good faith" as a
fiduciary duty, arising from the relationship between the executive and the non-executive
and not from the contract or deed. (3) See Manges v. Guerra, 673 S.W.2d 180, 183 (Tex.
1984). According to the supreme court, the duty of utmost good faith requires the holder
of the executive right to acquire for the non-executive "every benefit that he exacts for
himself." Id.

 The Manges case arose out of the purchase by Manges of certain mineral interests
and executive rights from the Guerras. Following the purchase, Manges and the Guerras
each owned a one-half mineral interest in the Guerra ranch, which made them co-tenants
in the mineral estate. Id. at 181. Manges acquired the exclusive executive rights to all the
minerals. Id. Thereafter, various members of the Guerra family sued Manges based on
a series of instruments, including a deed of trust which purported to cover the entire
mineral estate. Id. at 182. Manges, claiming that the lawsuit made it impossible to lease
to a third party, leased 25,911.62 acres to himself. Id. The lease was for ten years, and
provided for a one-eighth royalty, a $5.00 bonus for the entire acreage, and a $2.00 per
acre annual delay rental. Id. After executing this lease, Manges entered into a farm-out
agreement (4) covering the same land and reserved a fifty percent working interest for
himself, free of drilling costs. Id. at 183. The Guerras sued Manges for failure to exercise
diligence in leasing the minerals to third persons and for leasing a portion of the minerals
to himself at unfair terms. Id. at 181. The supreme court held that, under the
circumstances, Manges owed the Guerras a fiduciary duty, which he breached by leasing
the entire fee to himself for a nominal bonus and by otherwise "dealing with the entire
mineral interest so that he received benefits that the non-executives did not receive." Id.
at 184. In upholding the award for punitive damages, the court commented that Manges
had "willfully, wantonly, maliciously and unconscionably breached his fiduciary duty." Id.
at 184-85.

 Because the Hlavinkas owned the exclusive executive rights to the 802.25 acre
tract, appellees had no right to participate in oil and gas leasing. See Dearing, Inc. v.
Spiller, 824 S.W.2d 728, 732 (Tex. App.-Fort Worth 1992, writ denied); Campbell v. Dreier,
382 S.W.2d 179, 183 (Tex. Civ. App.-San Antonio 1964, writ ref'd n.r.e.). Appellees were
solely dependent upon the management of the Hlavinkas in realizing any income from their
mineral interests. Because the Manges case held that the executive owes the non-executive a fiduciary duty, appellees correctly assert that the Hlavinkas owe a duty to
acquire every benefit for the non-executive mineral interest owners that the Hlavinkas
would acquire for themselves. See Manges, 673 S.W.2d at 183.

3. Breach of Fiduciary Duty


 Having determined that the standard of "utmost good faith" is a fiduciary duty, we
must next determine whether the Hlavinkas' actions were in derogation of this duty. By
their ninth amended petition, appellees allege that the Hlavinkas had breached their
fiduciary duty by: (1) failing or refusing to enter into any lease; (2) failing to disclose
information material to the development of the minerals; and (3) allowing seismic
operations to be conducted on the property without compensation to appellees as part
mineral owners.

a. Failure to Enter into any Lease


 Appellees contend that under either a fiduciary standard or an utmost-good-faith
standard, the Hlavinkas were required to lease the land for mineral development if a
reasonable offer to lease was made. They assert that by failing to negotiate with Adobe,
the Hlavinkas breached their duty to appellees, the non-executive mineral interest owners.

 The trial court instructed the jury that as holders of the executive rights, the
Hlavinkas had "the duty to exercise their executive rights with the same degree of diligence
and discretion as would be expected of an average landowner who because of self-interest
is normally willing to take affirmative steps to seek or to cooperate with prospective
lessees." (5) The trial court also instructed the jury that "executive rights" means the
exclusive right or power to make and execute leases and other agreements for the
exploration for and production of oil, gas and other minerals, without the joinder of co-owners of the mineral estate.

 Appellees contend the Hlavinkas refused to negotiate or accept any offers to lease
by Adobe because the Hlavinkas owned only one-ninth of the minerals and were
unsuccessful in their efforts to acquire more. Appellees assert the situation is analogous
to the Manges case where the jury found that Manges had willfully disregarded the rights
of the Guerras by his failure to negotiate for mineral leases with third persons. See id. at
184.

 Appellees improperly analogize the facts in Manges with those in the present case
to support their breach of fiduciary duty claim against the Hlavinkas. Testimony at trial
established that surrounding landowners had received greater consideration for executing
oil and gas leases than was being offered to the Hlavinkas. The Hlavinkas, admittedly not
experienced in oil and gas lease transactions, attempted to acquire lease terms equal to
or above the market value of the surrounding land owners. This was not a case where the
Hlavinkas were arbitrarily refusing to lease under any circumstances. The record reflects
that just prior to suit being filed against them, the Hlavinkas were willing to negotiate with
Adobe and were asking for $650.00 an acre. Thus, the record shows that the Hlavinkas
were willing to lease and were seeking terms similar to those obtained by neighboring land
owners.

 Further, this is not a case where the Hlavinkas entered into a transaction affecting
the mineral estate where they exacted a benefit for themselves, to the exclusion of the
appellees. Where a party having executive leasing privileges enters into a transaction in
which he and the non-executive mineral holders are both interested and the executive is
authorized to act for both parties, he must exact for the non-executive every benefit that
he exacts for himself. Portwood v. Buckalew, 521 S.W.2d 904, 911 (Tex. Civ. App.-Tyler
1975, writ ref'd n.r.e.). If he can obtain overriding royalties or cash bonuses for the non-executives and himself, it is his duty to have done so. Id.

 Conversely, if the Hlavinkas had accepted Adobe's first offer of a three-year paid-up
lease for $175.00 per acre and a one-fifth royalty, they could conceivably be held liable for
failing to negotiate for market value. An executive interest owner may be held liable to the
non-executive mineral interest owner if he accepts a lease containing inferior terms. See
Dearing, 824 S.W.2d at 733 (executive breached duty of utmost good faith by executing
lease to family-owned corporation that did not provide for at least fair market royalty
prevalent in surrounding area at that time); Hawkins v. Twin Montana, Inc., 810 S.W.2d
441, 445-46 (Tex. App.-Fort Worth 1991, no writ) (concluding executive breached fiduciary
duty to mineral interest owners by accepting one-eighth royalty instead of previously
offered one-fourth royalty); see also Smith, Implications of a Fiduciary Standard of Conduct
for the Holder of the Executive Right, supra, at 398 (stating failure to negotiate for current
market terms is frequently alleged as ground for breach of fiduciary standard).

 Unlike the Manges case, there was also no self-dealing by the Hlavinkas. The
Hlavinkas did not execute a lease to themselves or to an entity they controlled as was the
situation in Manges. See Manges, 673 S.W.2d at 184. Nor did the Hlavinkas withhold or
fail to share money belonging to appellees as co-tenants in the mineral estate. The cases
finding a breach by the executive all deal with disproportionate benefits or inappropriate
consideration inuring to the executive under the terms of a lease or as a result of its
execution. An element of unjust enrichment or self-dealing is common to the cases. See
id. (breaching fiduciary duty in leasing to himself); Dearing, 824 S.W.2d at 733 (executive
breached duty of utmost good faith by executing lease to family-owned corporation that did
not provide for at least fair market royalty prevalent in surrounding area at that time); Mims
v. Beall, 810 S.W.2d 876, 881 (Tex. App.-Texarkana 1991, no writ) (executives leased
land to their son for one-eighth royalty rather than to disinterested third party for three-sixteenths royalty); Hawkins, 810 S.W.2d at 444 (executive who owned surface and right
to receive all bonus and delay rentals and failed to act in face of possible drainage, justified
appointment of receiver to execute an oil and gas lease); Comanche Land & Cattle Co. v.
Adams, 688 S.W.2d 914, 916 (Tex. App.-Eastland 1985, no writ) (owner of executive
rights violated duty of utmost good faith when it purposely entered into agreement
calculated to defeat rights of nonparticipating term royalty interest owners); Kimsey v. Fore,
593 S.W.2d 107, 113 (Tex. Civ. App.-Beaumont 1979, writ ref'd n.r.e.) (negotiating lease
provisions creating economic incentives to delay drilling until after expiration of plaintiffs'
nonparticipating term royalty interests, violated duty of fair dealing owed to owners of term
royalty interests); Portwood, 521 S.W.2d at 914 (executive improperly negotiated and
entered into lease whereby executive, as surface owner, received extravagant overriding
royalty interest which she classified as surface damages, thereby defeating right of non-executive mineral interest owners to participate).

 Moreover, appellees misconstrue Manges in seeking to impose a fiduciary duty to
lease upon the executive interest owner. Appellees seek to equate the duty to develop
with the executive's duty to use utmost good faith in the exercise of his rights. A duty to
develop a mineral estate arises not from a fiduciary relationship, but from an implied
covenant applicable to oil and gas leases when necessary to effectuate the intent of the
parties. Danciger Oil & Ref. Co. v. Powell, 137 Tex. 484, 154 S.W.2d 632, 635 (1941). 
The Texas Supreme Court has distinctly differentiated between the duty to develop and
a fiduciary duty. See In re Bass, No. 02-0071, 2003 Tex. LEXIS 114, at *19-*20 (July 3,
2003) (orig. proceeding).

 In Bass, the supreme court refused to impose an implied covenant to develop land,
relying primarily on the fact that there existed no oil and gas lease. Id. at *21. The
supreme court noted that in both the Schlittler and Manges decisions, it had imposed
duties upon the executive interest owners in conjunction with the execution of oil and gas
leases. Id. at *23. The court concluded that the executive did not breach a fiduciary duty
to the non-executives without having exercised his executive power. Id. at *26.

 Accordingly, because they have not acquired any benefits for themselves pursuant
to any lease, we conclude the Hlavinkas did not breach their fiduciary duty to appellees by
failing to enter into any lease.

b. Failure to Disclose Information Material to the Development of the Minerals


 Appellees contend that the Hlavinkas' failure to notify or inform the non-executive
mineral interest owners of continuing negotiations amounted to a breach of their fiduciary
duty. On March 5, 1997, appellee Joe Bruce Hancock wrote a letter to the Hlavinkas
requesting an accounting of all the lease offers received by the Hlavinkas. On March 5,
1998, counsel for appellees sent a letter to the Hlavinkas requesting information
concerning offers, counteroffers, and informal solicitations and inquiries, which the
Hlavinkas were a party to with respect to the development of the minerals. The Hlavinkas
failed to respond to either request.

 The information requested by appellees all pertained to continuing lease
negotiations between the executives and possible lessees. As owners of the executive
rights, the Hlavinkas owned the exclusive right to make a lease. See Dearing, 824 S.W.2d
at 732; Campbell, 382 S.W.2d at 183. As non-executive mineral interest owners,
appellees had no right to participate in oil and gas leasing. See Dearing, 824 S.W.2d at
732. We find no evidence of any breach of any duty to disclose. For there to be
actionable nondisclosure, there must by a duty to disclose. Lesikar v. Rappeport, 33
S.W.3d 282, 299 (Tex. App.-Texarkana 2000, pet. denied).

 Therefore, we conclude that the Hlavinkas did not breach their fiduciary duty to
appellees by failing to disclose information material to the development of the mineral
estate.

c. Surface Damages


 Appellees contend the Hlavinkas breached their fiduciary duty by permitting seismic
operations to take place on the property pursuant to agreements which provided the
surface owners with all of the compensation, thereby receiving a benefit to the exclusion
of the non-executive mineral interest owners.

 As executive interest owners, the Hlavinkas' executive duty extends to the
negotiation of surface damages to the extent that the surface damage payments are a
substitute for a larger bonus, royalty, or other benefit that would have to be shared with the
co-mineral owners. See Portwood, 521 S.W.2d at 916. An executive acts improperly in
negotiating for surface damage payments that reduce the size of the bonus, royalty, or
other benefit which would have to be shared with the non-executive. See id.

 Here, the Hlavinkas are the sole owners of the surface estate. As such, the money
received by the Hlavinkas as compensation for surface damages due to the seismic
operations on the property did not have to be shared with appellees, unless the
compensation was a substitute for a larger bonus, royalty, or other benefit that would have
to be shared with the co-mineral owners. See id. Because they have not used their power
to lease, we conclude the Hlavinkas have not breached a fiduciary duty to appellees. See
Bass, 2003 Tex. LEXIS 114, at *26.

 Because we have found no evidence in the record establishing that the Hlavinkas
breached a fiduciary duty or that the Hlavinkas committed any acts of preference or self-dealing, we hold the evidence is legally insufficient to support the jury's finding of liability.
Accordingly, we sustain the Hlavinkas' first issue.

 In light of our disposition of the Hlavinkas' first issue, it is unnecessary to address
their remaining issues. See Tex. R. App. P. 47.1.

 

 We reverse the judgment of the trial court and render judgment that appellees take
nothing by their suit.


 FEDERICO G. HINOJOSA

 Justice



Opinion delivered and filed this the

4th day of September, 2003.
1. Appellees are: Joe Bruce Hancock, Jr.; Reeves W. Westmoreland, Trustee for the Reid T.
Westmoreland Trust; Dr. John T. Wynn; Joe Bruce Hancock Jr., as Administrator of the Estate of W. A.
Northington, Jr., Deceased; Essie Leslie and Joe Bruce Hancock Jr., Co-Trustees for the Estate of Clements
Northington Trust; Essie Lynn Hancock Leslie; Mary Hancock Post; Joshua Ryan Hancock; Anita Northington;
Frances Cannon Meriwether; Nancy Hancock Sanders; Lou Anne Hancock Kellman; Harold M. Northington;
Clara Jane Lovell; William R. Suggs; and Bruce Carlton Suggs.
2. Terrance Hlavinka testified that during the same time period, the Hlavinkas turned down a similar
offer on a nearby 338 acre tract under which the Hlavinkas owned the entire mineral estate because they
believed the offer to be below market.
3. Until Manges, the utmost-good-faith standard had not been considered to create a fiduciary duty. 
See Mims v. Beall, 810 S.W.2d 876, 878 (Tex. App.-Texarkana 1991, no writ). Cases interpreting the
Manges decision have concluded that when the executive and non-executive are co-tenants in the mineral
estate and there is a relationship of trust and confidence between the parties, a fiduciary relationship exists
between the executive and the non-executive mineral interest owner. See Marathon Oil Co. v. Moye, 893
S.W.2d 585, 591 (Tex. App.-Dallas 1994, orig. proceeding); Pickens v. Hope, 764 S.W.2d 256, 267 (Tex.
App.-San Antonio 1988, writ denied).
4. A farm-out agreement is an agreement between operators whereby a lease owner assigns the lease
or a portion of it to another operator. The obligation of the assignee to drill one or more wells on the assigned
acreage is the primary characteristic of the farm-out. 8 H. Williams & C. Myers, Oil and Gas Law, Manual
of Oil and Gas Terms 262-63 (1982).
5. The language used by the trial court in this case is similar to the trial court's jury charge in Manges. 
In Manges, the trial court instructed the jury that the executive "owes to the co-mineral owners the same
degree of diligence and discretion in exercising the rights and powers granted under such Executive Rights
as would be expected of the average land owner who because of self-interest is normally willing to take
affirmative steps to seek or to cooperate with prospective lessees." Manges v. Guerra, 673 S.W.2d 180, 183
(Tex. 1984).