John MIMS, et al., Appellants,

v.

Webber W. BEALL, Sr., et al., Appellees.

No. 6–90–034–CV.

Court of Appeals of Texas, Texarkana.

June 18, 1991.

Rehearing Overruled June 18, 1991.

J. Clay Gossett, Wilder, Wilder & Gossett, Henderson, for appellants.

Gregory D. Smith, Ramey, Flock, Jeffus, Crawford, Harper, Tyler, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

John, Chattie and Angus Mims appeal from a judgment in favor of Webber W.

Beall, Sr., Ethell Beall Gilbert, Annie Dee Beall Hensley, Carla Ann Beall Darter, and Elizabeth Watkins Beall, based upon jury findings that the Mimses breached their duty of utmost good faith and fair dealing owed by them as holders of executive rights to non-participating royalty owners in an oil and gas transaction. The trial court awarded actual and exemplary damages and imposed a constructive trust on an overriding royalty obtained by the lessor through assignment of the lease.

In 1947, the Bealls' parents sold approximately 200 acres of land to John and Chattie Mims retaining an undivided 1/4 non-participating interest in the royalties obtained through leasing of the tract. In April, 1979, their son, Angus Mims, having learned that an adjoining property was being developed, leased the mineral interests under this tract from his parents for a $\frac{1}{8}$ royalty without a cash bonus. In August, 1979, Angus assigned the lease to Henderson Clay Products, Inc. in return for a 1/16 overriding royalty on the leasehold estate. The Bealls contend that these activities constituted a breach of duty to the non-participating royalty owners because the 1/8 royalty was unreasonably low. They argue that the overriding interest obtained by Angus was proof of a breach of duty.

In the charge, the court instructed the jury that the holder of the executive rights must use "utmost good faith and fair dealing" in matters that impact the non-participating royalty owners. The jury found that John Mims and his wife breached their duty to the Bealls and awarded $500.00 in actual damages for this breach. It further found that Angus Mims participated in the breach and awarded $31,127.67 in actual damages. Upon separate findings that the Mimses acted in an unconscionable, willful and wanton manner and in total disregard of the Beall's rights, the jury also awarded $2,500 in exemplary damages from John Mims and $5,000 in exemplary damages from Angus Mims. The trial court further imposed a constructive trust on 1/4 of the 1/16 overriding royalty interest owned by Angus Mims.

In twenty-six points of error, the Mimses contend that the trial court erred in rendering judgment for the Bealls because there was no evidence or there was insufficient evidence to support the findings on the essential elements, because there was no fiduciary relationship between the Mimses and the Bealls, and because there was no finding of fraud, confidential relationship, or breach of fiduciary duty.

The Bealls raise two cross-points contending (1) that the trial court erred in rendering a summary judgment on the Bealls' fraud claim because those claims were governed by a four-year statute of limitations, rather than the two-year statute of limitations applied by the trial court and (2) that the trial court erred in refusing to submit the proper jury question to establish liability on the part of Angus Mims.

■ Texas courts have generally held that the accepted standard required of one exercising executive rights to lease or develop minerals is that of utmost good faith[1] or the ordinary prudent landowner test. *See* Smith, *Implications of a Fiduciary Standard of Conduct for the Holder of the Executive Right*, 64 TEXAS L.REV. 371 (1985). The utmost good faith test was set forth by the Texas Supreme Court in *Schlittler v. Smith*, 128 Tex. 628, 630, 101 S.W.2d 543, 545 (1937). This is a stronger standard than simple good faith but has generally been considered a lesser standard than a fiduciary obligation.

Until the Texas Supreme Court's decision in *Manges v. Guerra*, 673 S.W.2d 180 (Tex. 1984), the utmost good faith standard had not been considered to create a fiduciary duty. In the *Manges* case, the Supreme Court used the terminology of an utmost good faith standard, which had been found by the trial court in that case, and then specifically equated that standard with a

---

**1.** The Texas Supreme Court in *Schlittler v. Smith*, 128 Tex. 628, 630, 101 S.W.2d 543, 545 (1937), used the term "utmost fair dealing." The courts have sometimes used "utmost good faith and fair dealing" or just "utmost good faith," but all three terms are used interchangeably without a distinction being made.

fiduciary obligation. Based upon the violation of the utmost good faith standard being a breach of the executive fiduciary duty, the Supreme Court in *Manges* upheld an award of exemplary damages.

In *Pickens v. Hope*, 764 S.W.2d 256 (Tex. App.–San Antonio 1988, writ denied), the San Antonio Court of Appeals distinguished *Manges* on the basis that in *Pickens* there was no duty to manage the non-participating royalty interest because the amount of that royalty was specifically set out as 1/4 and could not be altered; whereas in *Manges*, the executive rights holder had a duty to manage the interest by obtaining the most royalty possible and was prohibited from self-dealing. The present case does not have a specific amount of royalty that is required for the non-participating royalty interest (only 1/4 of whatever royalty is obtained and no less than 1/8), and thus the percentage is left to the efforts of the executive.

The present case is analogous to the *Comanche Land and Cattle Co. v. Adams* case [2] in which the non-participating royalty interest was set at 1/2 of the royalty interest obtained by the executive rights holder. In *Comanche Land*, the court followed the *Manges* decision, quoting the language from that opinion which stated that the executive rights owner owed a duty of utmost good faith and thus a fiduciary duty to the non-participating royalty owner.

■ The facts in *Manges* differ from the present case in that the non-participating interest owners in *Manges* were also cotenants with Manges, the executive rights owners, and Manges' management determined not only the amount of royalties received by these non-participating interest owners but also the amount of bonus and delay rentals. The fact that the non-participating interest owners were cotenants of Manges did not create a fiduciary relationship in the absence of an agreement or contract providing for such. *See Donnan v. Atlantic Richfield*, 732 S.W.2d 715 (Tex. App.–Corpus Christi 1987, writ denied), and cases cited thereunder. The significant relationship which gives rise to the fiduciary duty is the exercise of the executive rights over the non-participating interest. This fiduciary duty should apply when the executive controls only the amount of the royalty interest just as it does when the executive controls both the amount of the royalty interest *and* the bonus and delay rentals.

In *Manges*, the court held that the fiduciary duty is owed only in the area of the executive interest owner's duty to obtain appropriate benefits for the non-participating royalty holders. Furthermore, in *Manges*, the Supreme Court does not apply the customary standard that the fiduciary must subordinate its own interest to those of the non-participating interest owner, but instead charges the fiduciary with acquiring for the non-executive every benefit that he exacts for himself.[3] *See Manges*, 673 S.W.2d at 183.

The Mimses contend that there was no evidence or insufficient evidence to support the jury finding that the Mimses breached their duty to the Bealls. The jury found that John and Chattie Mims breached their duty to the Bealls of "good faith and utmost fair dealing".[4]

■ In our review of the legal and factual sufficiency of the evidence, we review the legal sufficiency of the evidence under the review standards of *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and the

---

**2.** *Comanche Land and Cattle Co. v. Adams*, 688 S.W.2d 914 (Tex.App.–Eastland 1985, no writ).

**3.** This standard was applied to a trustee by a federal court in the case of *Teas v. Twentieth Century–Fox Film Corp.*, 178 F.Supp. 742 (N.D. Tex.1959), *rev'd* 286 F.2d 373 (5th Cir.1961), *cert. denied*, 368 U.S. 818, 82 S.Ct. 33, 7 L.Ed.2d 24 (1961).

**4.** In line with the *Manges* decision, the jury was properly instructed that the phrase "utmost good faith and fair dealing" meant

[T]he use of the same degree of diligence and discretion in exercising the rights and powers held by an executive owner as would be utilized by the average landowner seeking to obtain all the benefits that could be reasonably obtained for himself and for his non-participating royalty owner from a disinterested third party in an arms-length transaction.

factual sufficiency under the review standards of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the finding, ignoring all contrary evidence. If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

■ When the standard is a fiduciary obligation, any self-dealing is prohibited. The rule against self-dealing extends to the fiduciary's dealings with a spouse, agents, employees and other persons whose interests are closely identified with those of the fiduciary. *See* G.G. BOGERT & G.T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 543 (2d ed. Supp.1989). This rule would apply to a parent-son relationship.

■ According to the evidence, John Mims was experienced in real estate transactions and was shown to have been a buyer or seller in 195 transactions duly recorded in Rusk County, Texas. At an earlier date, John Mims had leased the minerals under this same property to Sesco Production Company. He reserved a 1/8 royalty and in addition received an overriding bonus royalty of 1/8. This was done in lieu of initially getting a 1/4 royalty and was a way to avoid paying 1/4 of this 1/8 royalty to the Bealls. This prior transaction is relevant to show John Mims' awareness of methods of circumventing the Bealls' ownership rights and his inclination to do so. The testimony showed that at the time the current lease was executed, this geographic area was an active or "hot" location for mineral development, and although some of the land in the area had been leased with 1/8 royalty provisions, there were other tracts with larger royalties. Furthermore, the immediate assignment of the lease showed that Henderson Clay Products was willing to pay an additional sum to obtain the lease. The testimony showed that there was no negotiation between father and son for the amount of the royalty, but the terms of the original Sesco Production Company lease were discussed. In effect, the son paid nothing for the lease. The father's testimony indicates that there was no arm's length transaction because he was willing to give it to his son if his son could get something out of it. Such a failure to negotiate for current market terms is frequently alleged as a ground for breach of the fiduciary standard. *See* Smith, *Implications of a Fiduciary Standard of Conduct for the Holder of the Executive Right, supra* at 398.

In *Manges*, the Supreme Court mandated that the executive interest owner must exact for his beneficiaries, the non-participating royalty owners, every benefit that he exacts for himself. This was not done in the 1968 transaction with Sesco Production Company because John Mims was to receive a 1/8 royalty override from which the non-participating royalty owners would not receive a percentage; and this was not true in the transaction involved in this case because the son is considered as having the same interest as the parents, and thus the non-participating owners were deprived of 1/4 of the royalty received by the son.

John Mims took the position that he had believed that there were title problems to the minerals that would create problems in leasing the tract. His son, Angus Mims, made a determination before leasing the property that there were no title problems to the tract and that Henderson Clay Products was willing to take an assignment of the minerals. He testified that he did not convey this information to his father.

■ Angus Mims did not owe a fiduciary duty to the Bealls, but a lessee who induces or participates in the executive's breach can also be held liable to the non-participating interest owner. *See Kimsey v. Fore*, 593 S.W.2d 107 (Tex.Civ.App.–Beaumont 1979, writ ref'd n.r.e). This participation or inducement to breach contractual obligations is similar in nature to an action for tortious interference with contractual relations. So long as the lessee maintains an arm's length position in the transaction, he does not owe a fiduciary duty or a duty of utmost good faith to the owner of a non-executive interest. If, however, the lessee agrees with the executive to an arrangement made for the purpose of

excluding or minimizing the benefits of an outstanding or non-participating interest owner, the lessee can be held liable to the injured third party.[5] Some authorities take the position that liability will also arise if the lessee should reasonably have been aware that the executive was acting in breach of his duty. *See generally*, G.G. BOGERT & G.T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES §§ 901–912 (2d ed. 1982). In the present case, even if his father had not informed him, Angus Mims was put on constructive notice of the reservation of the 1/4 non-participating royalty held by the Bealls because the lease had been filed with the county clerk. *See Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982). Whether the question to the jury used the term *induce* or *participate* in making an inquiry about Angus Mims is of no consequence. The gist of the question presents the jury with the proper inquiry. There was sufficient evidence for the jury to infer that Angus knowingly participated in a breach of duty owed to the Bealls.

The Mimses challenged the sufficiency of the evidence to show damages and to show that the Mimses were the producing cause of the damages. Under the standard set forth in the *Manges* case, the non-participating royalty owners were entitled to receive the royalty on the same basis as the executive rights owner. The jury had sufficient evidence to have determined that the Mimses were self-dealing by leasing the property to their son. Thus, the Bealls would be entitled to 1/4 of the royalty paid to the son, Angus.

There was testimony that Webber Beall's non-participating royalty interest based upon the 1/8 royalty totaled $15,563.82. Webber Beall received 1/4 of the Bealls' interest. Therefore, the Bealls' cumulative 1/4 interest from the 1/8 royalty was $62,-255.28. The Bealls' 1/4 interest of the 1/16 would have totaled 1/2 of this figure which is $31,127.64. This was the amount of actual damages for royalties already collected, and this amount was awarded against Angus Mims. The Bealls would have been entitled to a judgment for joint and several liability against both Angus Mims, as well as John and Chattie Mims; however, no complaint is made on appeal about this provision in the judgment. There was no evidence for the award of the $500 damages in addition to the $31,127.64 figure. The judgment should have awarded only a total of $31,127.64 in actual damages. This figure should include the $500 damages awarded against John and Chattie Mims by making them jointly and severally liable with Angus Mims for the $500 amount. The judgment is in error on this point.

The constructive trust is remedial in nature and is often used in redressing wrongs or unjust enrichment in keeping with the basic principles of equity and justice. A constructive trust is applied in cases of actual fraud as well as situations involving a breach of fiduciary duty. *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974). As we have previously discussed, the trial court entered a partial summary judgment striking all fraud allegations on the basis of the statute of limitations. Nevertheless, we have found that the evidence supported a finding of a breach of fiduciary duties and on that basis the constructive trust will stand.

In *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502 (Tex.1980), the Texas Supreme Court held that an award of exemplary damages is proper against a fiduciary who has been guilty of unfair self-dealing. *See also Murphy v. Canion*, 797 S.W.2d 944 (Tex.App.–Houston [14th Dist.] 1990, no writ). A suit for a breach of contract will not support a judgment for exemplary damages even if the agreement is maliciously breached. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981). Nevertheless, the malicious breach of a fiduciary duty will support an award of exemplary damages. *Manges v. Guerra*, 673 S.W.2d at 194.

---

5. *See* Smith, *Implications of a Fiduciary Standard of Conduct for the Holder of the Executive Right*, 64 Texas L.Rev. 371, 396 (1985).

The conduct of John Mims in negotiating the earlier lease so that the Bealls would not receive their proper percentage of the royalty and the conduct of Angus Mims in not recording the portion of the lease relating to the amount of royalty were evidence from which the jury could infer that they conspired for the purpose of violating the fiduciary duty through self-dealing.

[[ ]] [7]

The judgment of the trial court is affirmed except that it will be reformed to show the total amount of actual damages to be $31,127.64, which will include a joint and several liability between Angus Mims and John and Chattie Mims in the amount of $500.

---

7. Any portion of this opinion between double brackets not to be published.