ACCEPTED
05-17-01187-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 9:53 PM
LISA MATZ
CLERK

No. 05-17-01187-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 9:53:31 PM
LISA MATZ
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTH JUDICIAL DISTRICT
DALLAS, TEXAS

# LINDA DOUGLAS

v.

# TAYLOR SIMS AND
# DALLAS PERFORMANCE, LLC

## BRIEF OF APPELLEES

ON APPEAL FROM CAUSE NO. CC-16-03688-E
IN THE COUNTY COURT AT LAW NUMBER FIVE
DALLAS COUNTY, TEXAS
HON. MARK GREENBERG, JUDGE PRESIDING

Filed June 1, 2018

**JULIE GOEN PANGER**
The Kiechler Law Firm
619 Broadway Street
Lubbock, Texas 79401
(806) 712-2889
(808) 712-2529 (f)
State Bar Number 24069793
julie@thelubbocklawyer.com

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**        Linda Douglas

*Trial Counsel*:        James Ellis
6440 North Central Expressway, Suite 750
Dallas, Texas 75206

Debran O'Neil
Carrington Coleman Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202

*Appellate Counsel*:    Anthony Arguijo
Scott Douglass & McConnico, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701

**Appellees:**        Taylor Sims and
Dallas Performance, LLC

*Trial Counsel:*        Justin Kiechler
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas 79401

*Appellate Counsel*:    Julie Goen Panger
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas 79401

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................i

TABLE OF CONTENTS .................................................................ii

INDEX OF AUTHORITIES ............................................................v

STATEMENT OF THE CASE ......................................................viii

STATEMENT OF FACTS ...............................................................1

    A.    Linda initially authorized DP to perform certain repairs and modifications to her car's camshaft. ...................1

    B.    DP gave Linda notice of its storage fee policy. .......................2

    C.    Linda later authorized DP to perform more modifications and repairs to her car, including work on the motor. .......................................................................3

    D.    Linda failed to pay the total amount owed to DP for work she requested, so DP has the car in its possession. ......6

SUMMARY OF THE ARGUMENT .....................................................10

ARGUMENT ...............................................................................11

    **Issue One** ...........................................................................13
    DP rightfully possesses Linda's car, because she failed to pay for the work she requested.

    A.    DP rightfully retained possession of the car pursuant to a possessory lien.............................................................14

        1.    Linda authorized DP to perform repairs and modifications to her car. ...........................................14

2.    DP completed the work requested by Linda. .............. 15

3.    Linda failed to pay for the work DP performed on the car. ................................................................... 15

B.    Linda did not prove each element of conversion or wrongful detainer. .............................................. 16

1.    Linda did not prove that she was entitled to possession of the car. ................................. 17

**Issue Two** ................................................................. 18
Linda agreed to DP's storage-fee policy, of which she was made aware before DP began working on her car.

A.    DP and Linda agreed to the storage-fee policy. .................... 19

1.    DP offered to store Linda's car for a fee.. .................... 19

2.    Linda accepted DP's offer to store the car for a fee, had a meeting of the minds with DP, and consented to the terms of the policy. .......................... 21

3.    The storage-fee agreement was supported by consideration. ........................................... 24

**Issue Three** .............................................................. 26
Linda accepted the additional services DP performed on the car when Brent signed the estimate authorizing DP to proceed with the work, which entitled DP to an award in quantum meruit.

A.    DP's additional work on Linda's car supported an award in quantum meruit. ............................................. 26

1.    DP provided valuable services for Linda. .................... 26

> 2. Linda accepted the services, and she was reasonably notified that she would be charged for DP's work. ..............................................26

**Issue Four**..........................................................................29
The trial court's award of attorney's fees to DP should be affirmed, because Linda prevailed on the above claims.

PRAYER ...................................................................................30

CERTIFICATE OF SERVICE.....................................................31

CERTIFICATE OF COMPLIANCE............................................31

# INDEX OF AUTHORITIES

**CASES**

*2900 Smith, Ltd. v. Constellation New Energy, Inc.,*
   301 S.W.3d 741 (Tex. App.—Houston [14th Dist.] 2009, no pet.)...... 13

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
   945 S.W.2d 812 (Tex. 1997) ............................................................... 29

*Associated Indem. Corp. v. CAT Contracting, Inc.,*
   964 S.W.2d 276 (Tex. 1998) ............................................................... 11

*Autozone, Inc. v. Reyes,*
   272 S.W.3d 588 (Tex. 2008) (per curiam) .......................................... 11

*Cain v. Bain,*
   708 S.W.2d 175 (Tex. 1986) (per curiam) ..................................... 12, 13

*City of Keller v. Wilson,*
   168 S.W.3d 802 (Tex. 2005) ......................................................... 11, 12

*Collision Center Paint & Body, Inc. v. Campbell,*
   773 S.W.2d 354 (Tex. App.—Dallas 1998, no writ)...................... 15, 16

*Cont'l Coffee Prods. Co. v. Cazarez,*
   937 S.W.2d 444 (Tex. 1996) ............................................................... 12

*Domingo v. Mitchell,*
   257 S.W.3d 34 (Tex. App.—Amarillo 2008, pet. denied).................... 20

*Gentry v. Squires Constr., Inc.,*
   188 S.W.3d 396 (Tex. App.—Dallas 2006, no pet.) ........................... 29

*Green Int'l, Inc. v. Solis,*
   951 S.W.2d 384 (Tex. 1997) ............................................................... 29

*Kroger Tex. Ltd. P'ship v. Suberu,*
    216 S.W.3d 788 (Tex. 2006) .............................................................. 11

*Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas,*
    508 S.W.2d 686 (Tex. Civ. App.—Dallas 1974, no writ) .............. 16, 17

*Morey v. Page,*
    802 S.W.2d 779 (Tex. App.—Dallas 1990, no writ)............................ 16

*Principal Life Ins. Co. v. Revalen Dev., LLC,*
    358 S.W.3d 451 (Tex. App.—Dallas 2012, pet. denied)...................... 23

*Ragsdale v. Progressive Voters League,*
    810 S.W.2d 880 (Tex. 1990) .............................................................. 30

*Robert L. Crill, Inc. v. Bond,*
    76 S.W.3d 411 (Tex. App.—Dallas 2001, pet. denied)........................ 24

*Ryan v. Abdel-Salam,*
    39 S.W.3d 332 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ... 15

*Solomon v. Greenblatt,*
    812 S.W.2d 7 (Tex. App.—Dallas 1991, no writ)................................ 24

*Stewart Title Guar. Co. v. Sterling,*
    822 S.W.2d 1 (Tex. 1991) .................................................................. 29

*Tex. Diamond Int'l, Inc. v. Tiffany & Co.,*
    47 S.W.3d 589 (Tex. App.—San Antonio 2001, pet. denied).............. 17

*Thompson v. Apollo Paint & Body Shop,*
    768 S.W.2d 373 (Tex. App.—Houston [14th Dist.] 1989)............. 14, 16

*Volume Millwork, Inc. v. W. Houston Airport Corp.,*
    218 S.W.3d 722 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) . 30

*Vortt Exploration Co. v. Chevron U.S.A., Inc.,*
   787 S.W.2d 942 (Tex. 1990) ......................................................... 26, 28

*Waisath v. Lack's Stores, Inc.,*
   474 S.W.2d 444 (Tex. 1971) ................................................................ 16

## STATUTORY PROVISIONS

Tex. Civ. Prac. & Rem. Code § 38.001 ................................................... 29

Tex. Const. art. 16 § 37 ......................................................................... 14

Tex. Prop. Code § 70.001 ..................................................... 13, 14, 15, 17

Tex. Prop. Code § 70.008 ....................................................................... 29

## STATEMENT OF THE CASE

This is an appeal from a case revolving around work performed by Dallas Performance, LLP (DP) on a vehicle owned by Linda Douglas (Linda). The Honorable Mark Greenberg presided over the jury trial. 2 R.R. 1. After the parties concluded their presentations of evidence, they filed competing requests for a directed verdict, which the trial court denied. 3 R.R. 152-183.

The jury found in favor of DP and Taylor Sims (Sims) on each of Linda's claims – conversion, wrongful detention of the vehicle, violations of the Deceptive Trade Practices Act, making of a fraudulent lien, and usury. C.R. 37-63. It awarded DP and Sims $9,000.00 for Linda's breach of contract regarding storage fees, $3,200.00 in quantum meruit for the work DP performed on the vehicle motor, $8,750.00 in attorney's fees, and $1,247.02 in costs. C.R. 37-63.

Linda filed a motion asking the trial court to disregard the jury verdict and a request for findings on elements omitted from the jury charge, both of which the court denied after a hearing. C.R. 66-104, 110; 5 R.R. 1-25. The trial court entered its judgment in accordance with DP's and Sims' motion for entry of a judgment. C.R. 105-113.

## STATEMENT OF FACTS

DP is a garage specializing in high-performance car repairs and modifications. 3 R.R. 15. Sims is a managing member of DP. 2 R.R. 134.

A.    <u>Linda initially authorized DP to perform certain repairs and modifications to her car's camshaft.</u>

On September 16, 2013, Linda paid for her 2004 Chevrolet Corvette to be towed on a flatbed trailer from her house to DP's garage for repairs and modifications to the car's camshaft. 2 R.R. 10, 14-19; 3 R.R. 71-72, 74, 80-81, 102-103; *see* C.R. 15-16. These modifications were requested to resolve issues Linda and her boyfriend, Brent, were having with the car, to the extent that they suggested DP not start the car for fear that it might harm the motor. 3 R.R. 36; *see* 6 R.R. 7, P.X. 3.

Brent had already visited the garage and discussed the work to be performed on the car. 2 R.R. 14-17; 3 R.R. 72, 75, 77-78, 105-106; *see* 6 R.R. 7, P.X. 3. Brent and DP agreed on an estimate of $3,979.68, as evidenced by an invoice DP provided to Linda and Brent. 2 R.R. 17; 3 R.R. 78-79; 6 R.R. 5-6, P.X. 2. At the bottom of the page, the invoice stated that "[a]n express mechanic's lien is hereby acknowledged on

above car, truck or vehicle to secure the amount of repairs thereto." 2 R.R. 87-88; *see* 6 R.R. 5, P.X. 2.

To afford a down payment of $1,500.00, Brent sold the couple's other vehicle. 2 R.R. 15, 17; 3 R.R. 88-89.

According to Linda, she and Chris Tolbert, a DP employee, discussed how she would make payments on the balance she owed, rather than paying it all off at one time. 2 R.R. 26, 90. Brent testified that he and DP worked out a payment plan where he and Linda would pay $300.00 per month "or something like that" for the work on the car. 3 R.R. 88. He immediately amended that statement to say that he had no agreement with DP about an amount; rather, he and Linda were told they could bring whatever amount they had to DP, because they did not have much money. 3 R.R. 88. Chris had no expectation it would take Linda and Brent an extended period of time to pay off the balance. 3 R.R. 123.

B.    DP gave Linda notice of its storage fee policy.

On the back of the invoice DP provided Brent and Linda, DP included language about its storage fee policy. 2 R.R. 88-89; 3 R.R. 12-13, 42-43, 51; 6 R.R. 6, P.X. 2. Specifically, the invoice said that cars

remaining at the garage more than three days after the customer had been notified work was completed on them would begin accruing storage fees at the rate of $40.00 per day. 3 R.R. 12, 20, 44; 6 R.R. 6, P.X. 2. A sign announcing this storage fee policy has been posted on the wall in DP's customer lobby since 2012. 3 R.R. 12-13, 109-111; *see* 6 R.R. 135-137, D.X. 20. The policy was created because customers had failed to promptly pay for work performed on their cars. 3 R.R. 12-13, 45, 107.

After DP was able to assess the car more thoroughly, it noted that the motor needed certain repairs to correct a fuel pump and valve train problem. 3 R.R. 36, 51, 103-106, 116-117; see 6 R.R. 7, P.X. 3. By email dated September 24, 2013, DP notified Linda that the repairs were needed. 2 R.R. 18-19; 3 R.R. 111-112; 6 R.R. 7, P.X. 3. Although a motor rebuild was suggested, Linda agreed for DP to install new pistons and rings. 2 R.R. 20.

DP performed the work Linda requested on the car. 3 R.R. 19, 47.

C.  Linda later authorized DP to perform more modifications and repairs to her car, including work on the motor.

On October 17, 2013, Brent visited the garage to inspect the work he and Linda requested, and he authorized DP to perform more modifications and repairs to Linda's car. 3 R.R. 41, 43, 46, 121; 6 R.R.

42, P.X. 16. During that visit, Brent signed an invoice reflecting the additional work to be performed, which increased the amount Linda owed to DP.[1] 2 R.R. 109-111; 3 R.R. 43, 46-47, 81-82, 121-122; 6 R.R. 42, P.X. 16; C.R. 13. This invoice, like the first, included DP's storage fee policy. 3 R.R. 43-44, 50-51. At trial, Brent testified that he signed the document, because "[i]t might be in [DP's] company policy or something." 3 R.R. 82-83.

Brent visited the garage multiple times while DP was performing the repairs and modifications. 3 R.R. 119-120.

In December 2013, DP emailed Linda to request a payment of at least $1,000.00 toward the balance she owed for the additional work she requested. 2 R.R. 21-22; 3 R.R. 124-125; 6 R.R. 10, P.X. 5. The email specifically addressed the motor work DP was performing on Linda's car. 6 R.R. 96, D.X. 9.

On January 30, 2014, Linda visited the garage, saw her car, and paid $1,000.00. 2 R.R. 23-25.

---

[1] Linda does not assert that Brent did not have the authority to act on her behalf with regard to decisions about her car. During trial, Linda and Brent acknowledged that Brent had the authority to make decisions for her about the car. 2 R.R. 99-100; 3 R.R. 68, 90.

By email dated February 17, 2014, DP notified Linda that it had completed the work on her car, which increased the value of the car. 2 R.R. 27; 113-114; 3 R.R. 20, 30-32, 35-36, 40, 125-126, 150-151; 6 R.R. 13, P.X. 7. DP gave Linda two options: (1) pay the remaining balance owed or (2) allow DP to store the car while she made payments, during which time she would owe storage fees. 2 R.R. 27; 6 R.R. 97, D.X. 10. Rather than charge Linda the standard policy amount of $40.00 per day for storage fees, DP reduced the fee to $50.00 per week. 3 R.R. 20; 6 R.R. 97, D.X. 10.

Linda responded to the email by saying, "No problem. Could you email me a statement showing charges and payments. Thanks." 6 R.R. 97, D.X. 10. DP complied and sent Linda the two invoices. 6 R.R. 97, D.X. 10. Sims acknowledged that the invoices are confusing, because they changed as the work progressed on the car. 3 R.R. 17.

At trial, Linda testified that when she received the email, she "was just thinking, I can't believe they're going to charge me storage. I thought we were – had an agreement where I would pay it out, but it is their policy to charge the storages." 2 R.R. 29.

After he was notified that the work was complete, Brent visited the garage, at which time one of DP's employees turned on the car to show him the work had been completed. 3 R.R. 85.

D.   Linda failed to pay the total amount owed to DP for work she requested, so DP has the car in its possession.

It is DP's policy to keep a car in its possession until the customer pays for the work performed on the car. 3 R.R. 29, 44-45. Linda could not pay the balance owed to DP when the work was finished, so DP did not release the car to her. 2 R.R. 28, 151-155.

On March 26, 2014, Linda made a payment of $500.00 during a visit to the garage. 2 R.R. 30-31. On April 23, 2014, Linda again visited the garage and made a payment of $1,000.00. 2 R.R. 31-32. At this point, Linda believed that if she paid off the balance she owed DP, then perhaps DP would waive the storage fees. 2 R.R. 33.

In August 2014, DP emailed Linda, because she had made no payments in months. 2 R.R. 36; 3 R.R. 128-129. DP asked whether Linda was still able to make monthly payments and reminded her that the vehicle was accruing storage fees at a rate of $50.00 per week. 6 R.R. 23, P.X. 10. Linda responded to the email by asking for the total she owed to see if she could pay it off that week. 6 R.R. 22, P.X. 10. She

also acknowledged the storage fees and asked if DP would be willing to "do anything about" the fees if she paid off her balance in the next week and a half. 6 R.R. 22, P.X. 10. DP noted that Linda had paid $4,000.00 toward her balance. 3 R.R. 128-130; 6 R.R. 21, P.X. 10. Chris, who was emailing on behalf of DP, told Linda, "I'll see if I can do anything with the storage fees, but I may not be able to do anything at all with that." 6 R.R. 21, P.X. 10.

Linda responded, "I told Brent the total bill with you guys was almost 12 he said no way, We may need to go over it one more time." 2 R.R. 40-41; 3 R.R. 129-130; 6 R.R. 20, P.X. 10. Chris attached the two invoices reflecting the balance Linda owed, and specifically referenced the motor work and repairs and modifications made to the car. 2 R.R. 41-42; 6 R.R. 19-20, P.X. 10; 25, P.X. 11. Linda emailed Chris and said, "Iam sure the no way statement was just for me Iam sure its right.I will let you know Friday/Monday at the lastest on pay off thanks". 2 R.R. 44; 3 R.R. 130; 6 R.R. 19, P.X. 19.

At trial, Linda acknowledged that she was not confused about the storage fees referenced in DP's email – she "almost knew he was going to charge me something" but did not know how much. 2 R.R. 39; 117-

118. Brent did not expect DP to erase the storage fees from their bill, but he hoped Sims would work with them on the amount of storage fees owed. 3 R.R. 87. Specifically, Brent hoped Sims would "cut [them] some slack" on the storage fees. 3 R.R. 87.

According to Linda, she visited the garage multiple times over the next few months trying to speak with Sims, but she was unable to do so. 2 R.R. 46-49. Without notifying DP, in February 2015, Linda filed for Chapter 13 bankruptcy to keep DP from disposing of her car. 2 R.R. 56-58; 113-116; 3 R.R. 15-16, 92.

In April 2015, a year after her last payment, Linda visited the garage and paid $300.00. 2 R.R. 59-60. The next month, Linda made a payment of $260.00. 3 R.R. 130-131; 6 R.R. 32, P.X. 13. Linda requested the car back, but DP refused her request, because Linda had not paid the total balance she owed. 3 R.R. 21-22. Brent acknowledged at trial that he did not expect DP to give the car back to him and Linda if they had not paid the balance they owed. 3 R.R. 93-95.

Brent and Linda visited the garage in February 2016 to get the car back, but an employee told them it was at an auction outside of Texas, which was not true. 2 R.R. 63-64, 172-173; 3 R.R. 27-28. At the

same time, DP unsuccessfully tried to obtain a mechanic's lien on the car. 2 R.R. 67-70, 94-97, 156-171; 3 R.R. 16-17, 23-27, 38.

In May 2016, in a meeting set up through DP's attorney, Linda and Brent visited the garage to view the car. 2 R.R. 70-71, 143, 146. An argument erupted between Brent and a DP employee, and Linda remained in the garage by herself. 2 R.R. 72-74, 144. She took her car's ignition key with her when she and Brent left the garage. 2 R.R. 116-117, 125. The next day, Sims emailed Linda to ask for the ignition key back, and she returned the key. 2 R.R. 117, 126, 142, 145-146, 149; 6 R.R. 85, P.X. 23.

In August 2016, Linda sued DP over the car, because she "didn't want to just stand by and let [DP] take it from [her]." 2 R.R. 79. The trial court entered a final judgment consistent with the jury's findings and in favor of DP and Sims. C.R. 115-116. It awarded DP $9,000.00 for Linda's breach of the agreement for storage fees, $8,750.00 in attorney's fees, and court costs. C.R. 115-116.

## SUMMARY OF THE ARGUMENT

DP rightfully possesses Linda's car by virtue of a possessory lien, because Linda failed to pay the balance owed to DP for work it performed on her car at Linda's request.

Linda was made aware of DP's storage-fee policy before DP began work on the vehicle, when she was provided the cost-estimate invoice that included the storage-fee policy. The policy was also posted on a sign in DP's lobby. Linda's boyfriend, Brent, signed a second cost-estimate invoice, which included the storage-fee policy, authorizing DP to proceed with additional work. Linda agreed to the storage-fee policy, and specifically, to the $50.00 per week charge for storage of her car, in an email response to DP.

Brent's signature on the second cost-estimate invoice constituted authorization for DP to make repairs and perform additional modifications to the car. This signature represented Linda's acceptance of the additional work performed by DP, which entitled DP to an award in quantum meruit.

DP is entitled to attorney's fees, because Linda breached her agreement with DP as to work on the car and storage fees.

# ARGUMENT

In a legal-sufficiency review, a reviewing court considers the evidence in the light most favorable to the verdict, indulging every reasonable inference in favor of the verdict. *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally-sufficient evidence supports a challenged finding of fact, the reviewing court should credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The factfinder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See City of Keller*, 168 S.W.3d at 819. The factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id*. As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id*. at 819-820.

Additionally, it is within the factfinder's province to resolve conflicts in the evidence. *Id.* at 820. Consequently, the reviewing court must assume that, where reasonable, the factfinder resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the factfinder to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* at 821. Thus, this Court must assume that the factfinder made all inferences in favor of the findings if a reasonable person could do so. *Id.*

As stated in *City of Keller*, the final test for legal sufficiency must always be "whether the evidence at trial would entitle reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In a factual-sufficiency challenge, a reviewing court must consider and weigh all of the evidence. *Cain v. Bain*, 708 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly

wrong and unjust. *Id.* The reviewing court may not pass upon the witnesses' credibility or substitute its judgment for that of the factfinder, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If the reviewing court determines the evidence is factually insufficient, the court must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; this is not necessary when affirming the judgment. *Id.*

**Issue One: DP rightfully possesses Linda's car, because she failed to pay for the work she requested.**

After DP performed the car repairs and modifications requested by Linda, she failed to pay for the services. DP retained possession of the car consistent with the provisions of Texas Property Code § 70.001, which grants mechanics the ability to keep possession of a car pursuant to a possessory lien. To date, Linda has not fully paid for DP's services, so DP rightfully possesses the car by virtue of the possessory lien. Because DP has a possessory lien on the car, it did not convert or wrongfully detain the car.

A.    DP rightfully retained possession of the car pursuant to a possessory lien.

Section 70.001(a) of the Texas Property Code states that "[a] worker in this state who by labor repairs an article, including a vehicle … may retain possession of the article until: (1) the amount due under the contract for the repairs is paid; or (2) if no amount is specified by contract, the reasonable and usual compensation is paid." Tex. Prop. Code § 70.001(a). "The statutory possessory lien granted under section 70.001 originated in common law to protect one who, by skill, effort and materials, created value in the property of another." *Thompson v. Apollo Paint & Body Shop*, 768 S.W.2d 373, 376 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (citing Tex. Const. art. 16 § 37).

1.    Linda authorized DP to perform repairs and modifications to her car.

In September 2013, Linda delivered her car to DP for repairs and modifications.[2] 2 R.R. 14-19. After evaluating the car, DP recognized what repairs were necessary, so it notified Linda about what should be done to the car. 3 R.R. 36, 51, 103-106, 111-112, 116-117. Linda initially

---

[2] Although Linda argues on appeal that no repairs were completed on her vehicle, thus somehow preventing DP from asserting a possessory lien, Linda's Third Amended Original Petition, filed March 15, 2017, expressly alleged that she delivered the car to DP for repairs and modifications. *See* C.R. 15-16.

agreed only to further modifications, but Brent later signed a cost-estimate invoice authorizing DP to perform repairs and modifications that required an engine rebuild. 2 R.R. 20; 3 R.R. 41, 43, 46-47, 81-82, 121-122. Linda made payments to DP even after it sent an email to Linda detailing the motor work it was performing. 6 R.R. 96, D.X. 9.

2. <u>DP completed the work requested by Linda.</u>

DP performed the work that Linda initially requested on the car. 3 R.R. 19, 47. After the repairs and further modifications were authorized by Brent, DP notified Linda that the work was completed on February 17, 2014. 3 R.R. 20, 40, 125-126.

3. <u>Linda failed to pay for the work DP performed on the car.</u>

Although Linda sporadically made payments toward the balance she owed DP, she failed and refused to pay DP for the entirety of work. Because Linda failed to pay DP for its work on the car, DP refused to return the car to Linda, pursuant to § 70.001 of the Texas Property Code. *See Ryan v. Abdel-Salam*, 39 S.W.3d 332, 337 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("In the case before us today, appellant never tendered payment in full, and so appellee's right to a possessory lien was never relinquished."); *see also Collision Center*

*Paint & Body, Inc. v. Campbell*, 773 S.W.2d 354 (Tex. App.—Dallas 1989, no writ) ("As a general rule, a tender of payment must include everything to which the creditor is entitled; any less sum is ineffectual.").

DP's continued possession of the car was not only allowed under the statute, it was necessary to establish and maintain the possessory lien. *Thompson*, 768 S.W.2d at 376. And, Brent acknowledged at trial that he did not expect DP to give the car back to him and Linda if they had not paid the balance they owed. 3 R.R. 93-95.

B.    Linda did not prove each element of conversion or wrongful detainer.

By contrast to DP's possession of the car pursuant to a possessory lien, conversion occurs when one person makes an unauthorized, wrongful assumption and exercises dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights. *Morey v. Page*, 802 S.W.2d 779, 786 (Tex. App.—Dallas 1990, no writ) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). Conversion is, essentially, a wrongful deprivation of property. *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas*, 508 S.W.2d 686, 687 (Tex. Civ. App.—Dallas 1974, no writ). To prove that a

conversion took place, a plaintiff must prove that at the time of the conversion, he was the owner of the property and had legal possession of it or was entitled to possession. *Id.* If the defendant proves that he has superior title or that he is entitled to the property pursuant to an agreement, the plaintiff cannot maintain an action for conversion. *See Tex. Diamond Int'l, Inc. v. Tiffany & Co.*, 47 S.W.3d 589, 591 (Tex. App.—San Antonio 2001, pet. denied).

1. <u>Linda did not prove that she was entitled to possession of the car.</u>

As Linda asserts in her brief, the only element at issue for the conversion claim is whether DP retained the car wrongfully. *See* Appellant's Brief, pp. 7, 9-10. Linda failed to prove that she was entitled to possession of the car, because DP did not convert or wrongfully detain the car. The jury agreed.

In DP's Original Counterpetition seeking damages from Linda for her failure to pay for the work performed by DP, DP specifically set forth that it refused to release the vehicle to Linda because she did not pay the total amount owed to DP. *See* C.R. 8. This is DP's statutory right – to retain possession of Linda's car, because she failed to pay the amount agreed for DP's work. *See* Tex. Prop. Code § 70.001.

As set forth above, Linda initially requested that DP perform certain repairs and modifications to her car, but she later, through Brent, authorized additional work. Linda failed to pay the amount owed for the entire amount of work performed by DP on her car. In turn, DP retained possession of the car to properly establish its possessory lien. In response to Question 15, the jury found that neither DP nor Sims converted Linda's car. *See* C.R. 51. In response to Question 22, the jury found that neither DP nor Sims was wrongfully detaining Linda's car. *See* C.R. 51.

Because Linda failed to prove that DP or Sims wrongfully detained or converted her car, and the jury expressly answered those questions in DP's and Sims' favor, this Court should affirm the trial court's judgment in DP's favor on the claim for conversion/wrongful detainer of the car.

**Issue Two: Linda agreed to DP's storage-fee policy, of which she was made aware before DP began working on her car.**

Linda's argument that no evidence supported the jury's finding of an agreement between Linda and DP as to storage fees disregards the evidence presented at trial. Not only was Linda made aware of the storage-fee policy on multiple occasions, but she agreed to the policy.

A.     <u>DP and Linda agreed to the storage-fee policy.</u>

Linda's assertion that the storage fees were punitive and not contractual is without merit. DP gave notice to Linda of the policy on multiple occasions, which she did not dispute, and her actions meet the requirements for an agreement as to the fees.

    1.     <u>DP offered to store Linda's car for a fee.</u>

Linda was made aware of DP's storage-fee policy before DP began work on the vehicle. On the back of the invoice DP provided Brent and Linda, DP included language about its storage fee policy. 2 R.R. 88-89; 3 R.R. 12-13, 42-43, 51; 6 R.R. 6, P.X. 2. Specifically, the invoice said that cars remaining at the garage more than three days after the customer had been notified work was completed on them would begin accruing storage fees at the rate of $40.00 per day. 3 R.R. 12, 20, 44; 6 R.R. 6, P.X. 2. A sign announcing DP's storage fee policy has also been posted on the wall in DP's customer lobby since 2012. 3 R.R. 12-13, 109-111; *see* 6 R.R. 135-137, D.X. 20.

During a visit in October 2013, Brent signed an invoice reflecting additional work to be performed on the car. 2 R.R. 109-111; 3 R.R. 43,

46-47, 81-82, 121-122; 6 R.R. 42, P.X. 16; C.R. 13. This invoice, like the first, included DP's storage fee policy. 3 R.R. 43-44, 50-51.

By email dated February 17, 2014, DP notified Linda that it had completed the work on her car. 2 R.R. 27; 113-114; 3 R.R. 20, 30-32, 35-36, 40, 125-126, 150-151; 6 R.R. 13, P.X. 7. In the email, DP gave Linda two options: (1) pay the remaining balance owed and take back possession of the car, or (2) allow DP to store the car while she made payments, during which time she would owe storage fees. 2 R.R. 27; 6 R.R. 97, D.X. 10. Rather than charge Linda the standard policy amount of $40.00 per day for storage fees, DP reduced the fee to $50.00 per week. 3 R.R. 20; 6 R.R. 97, D.X. 10.

This email constituted an offer – either pay the balance owed and take your car or pay storage fees while your car takes up space in the garage. DP gave Linda two choices. The choices were clear, and the essential elements of the offer were communicated to Linda. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). Linda argues that this was a directive on DP's part – Linda had no ability to accept or reject the decision, because DP was going to charge the fees regardless. *See* Appellant's Brief, p. 14. This is not the

case. Had Linda paid the balance she owed to DP, no storage fees would have accrued.

2. <u>Linda accepted DP's offer to store the car for a fee, had a meeting of the minds with DP, and consented to the terms of the policy.</u>

Linda responded to DP's email by saying, "No problem. Could you email me a statement showing charges and payments. Thanks." 6 R.R. 97, D.X. 10. DP complied and sent Linda the two invoices. 6 R.R. 97, D.X. 10. At trial, Linda testified that when she received the email, she "was just thinking, I can't believe they're going to charge me storage. I thought we were – had an agreement where I would pay it out, but it is their policy to charge the storages." 2 R.R. 29.

On April 23, 2014, Linda made a payment of $1,000.00. 2 R.R. 31-32. At this point, Linda believed that if she paid off the balance she owed DP, then perhaps DP would waive the storage fees. 2 R.R. 33. But, she still recognized that the storage fees would be charged, as DP made her aware.

In August 2014, DP emailed Linda, because she had made no payments in months. 2 R.R. 36; 3 R.R. 128-129. DP asked whether Linda was still able to make monthly payments and reminded her that

the vehicle had been accruing storage fees at a rate of $50.00 per week. 6 R.R. 23, P.X. 10. Linda responded to the email by asking for the total she owed to see if she could pay it off that week. 6 R.R. 22, P.X. 10. She also acknowledged the storage fees she owed and asked if DP would be willing to "do anything about" the fees if she paid off her balance in the next week and a half. 6 R.R. 22, P.X. 10. DP noted that Linda had paid $4,000.00 toward her balance. 3 R.R. 128-130; 6 R.R. 21, P.X. 10. Chris, who was emailing on behalf of DP, told Linda, "I'll see if I can do anything with the storage fees, but I may not be able to do anything at all with that." 6 R.R. 21, P.X. 10.

Linda responded, "I told Brent the total bill with you guys was almost 12 he said no way, We may need to go over it one more time." 2 R.R. 40-41; 3 R.R. 129-130; 6 R.R. 20, P.X. 10. Chris attached the two invoices reflecting the balance Linda owed, and specifically referenced the motor work and repairs and modifications made to the car. 2 R.R. 41-42; 6 R.R. 19-20, P.X. 10; 25, P.X. 11. Linda emailed Chris and said, "Iam sure the no way statement was just for me Iam sure its right.I will let you know Friday/Monday at the lastest on pay off thanks". 2 R.R. 44; 3 R.R. 130; 6 R.R. 19, P.X. 19.

At trial, Linda acknowledged that she was not confused about the storage fees referenced in DP's email – she "almost knew he was going to charge me something" but did not know how much. 2 R.R. 39; 117-118. Linda did not dispute the storage fees to DP. She expressly told DP she was sure the invoices were correct. Brent testified that he did not expect DP to erase the storage fees from their bill, but he hoped Sims would work with them on the amount of storage fees owed. 3 R.R. 87. Specifically, Brent hoped Sims would "cut [them] some slack" on the storage fees. 3 R.R. 87.

Linda's responses and statements directly contradict the argument that she "never consented to the storage fees and instead repeatedly indicated her disapproval of them." *See* Appellant's Brief, p. 16. Instead, her actions show an acceptance and meeting of the minds. *See Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied) (A "meeting of the minds refers to the parties' mutual understanding and assent to the expression of their agreement.").

3.    The storage-fee agreement was supported by consideration.

Consideration can be either "a benefit to the promisor or a detriment to the promisee." *Robert L. Crill, Inc. v. Bond*, 76 S.W.3d 411, 418 (Tex. App.—Dallas 2001, pet. denied). It may consist of "some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss, or responsibility that is undertaken or incurred by the other party." *Solomon v. Greenblatt*, 812 S.W.2d 7, 15 (Tex. App.—Dallas 1991, no writ).

Linda's brief alleges that DP "did not undertake any responsibility, forbear any opportunity, or suffer any loss as a result of holding Linda's car." *See* Appellant's Brief, p. 17. This directly contradicts the evidence presented to the jury. Sims testified that having to store Linda's car at the garage while she refused to pay for its work was a burden. 2 R.R. 152-154. The car took up storage space and resulted in out-of-pocket costs for DP, because it had to be stored in other places to allow DP more room to work on other vehicles. 2 R.R. 152. The space Linda's car took up in DP's garage meant one less vehicle on which DP could work. Or, when DP was forced to move the car to another location so that it had room to work on another car, it

had to pay hard costs to do so. It only would have benefited DP for Linda to pay for the work she requested so that DP could give possession of the car back to Linda.

Moreover, while it was inconvenient for Linda not to have her car, DP's willingness to store the car and keep it safe provided a benefit to Linda while she failed to pay for work performed on the car. Again, the argument made in Linda's brief that she received no benefit from DP's storage of the car contradicts the evidence. *See* Appellant's Brief, p. 17. Linda told the jury that she cancelled her insurance on the car when she learned that DP had "way more insurance that I could ever afford." 2 R.R. 117. She "felt that [the car] was probably pretty safe" in DP's garage. 2 R.R. 117.

Linda and DP had a valid agreement for storage fees, and Linda still has not paid the balance owed to DP. Because the jury found that this agreement existed, and that Linda failed to comply with the agreement, this Court should affirm the jury's finding that Linda failed to pay DP $9,000.00 in storage fees. *See* C.R. 58.

**Issue Three: Linda accepted the additional services DP performed on the car when Brent signed the estimate authorizing DP to proceed with the work, which entitled DP to an award in quantum meruit.**

The additional work DP performed on Linda's car supported an award in quantum meruit, because Brent's signature on the second cost-estimate invoice constituted authorization for the work, and it represented Linda's acceptance.

A.   DP's additional work on Linda's car supported an award in quantum meruit.

DP meets the elements required to recover under quantum meruit. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

    1.   DP provided valuable services for Linda.

In her brief, Linda does not dispute that DP provided valuable services for Linda when it provided repairs and modifications to the car. *See* Appellant's Brief, p. 19-20.

    2.   Linda accepted the services, and she was reasonably notified that she would be charged for DP's work.

On October 17, 2013, Brent visited the garage to inspect the work he and Linda requested, and he authorized DP to perform more modifications and repairs to Linda's car. 3 R.R. 41, 43, 46, 121; 6 R.R.

42, P.X. 16. During that visit, Brent signed an invoice reflecting the additional work to be performed, which increased the amount Linda owed to DP. 2 R.R. 109-111; 3 R.R. 43, 46-47, 81-82, 121-122; 6 R.R. 42, P.X. 16; C.R. 13. Brent visited the garage multiple times while DP was performing the repairs and modifications. 3 R.R. 119-120.

In December 2013, DP emailed Linda to request a payment of at least $1,000.00 toward the balance she owed for the additional work she requested. 2 R.R. 21-22; 3 R.R. 124-125; 6 R.R. 10, P.X. 5. The email specifically addressed the motor work DP was performing on Linda's car. 6 R.R. 96, D.X. 9. Linda paid $1,000.00 to DP on January 30, 2014, well after Brent authorized and DP began the additional work on the car. 2 R.R. 23-25.

By email dated February 17, 2014, DP notified Linda that it had completed the work on her car. 2 R.R. 27; 113-114; 3 R.R. 20, 30-32, 35-36, 40, 125-126, 150-151; 6 R.R. 13, P.X. 7. Linda responded to the email by saying, "No problem. Could you email me a statement showing charges and payments. Thanks." 6 R.R. 97, D.X. 10. DP complied and sent Linda the two invoices. 6 R.R. 97, D.X. 10.

DP was authorized to perform the additional work on Linda's car, and Linda was made fully aware that she was being charged for the work. Had DP returned the car to Linda, as she wanted, it would have relinquished its possessory lien and lost the ability to collect on what it was owed. By keeping the car, Linda alleges that DP converted the car after performing work she did not authorize. DP was damned if they did and damned if they didn't. Linda's expectations of DP after it completed the work requested on the car are the definition of unjust enrichment. *See Vortt*, 787 S.W.2d at 944 ("Recovery in quantum meruit will be had when non-payment for the services rendered would result in an unjust enrichment to the party benefited by the work.")(citations omitted).

The assertion that "[t]here is nothing to suggest that additional motor work was performed or that Linda would be charged for it" is false. *See* Appellant's Brief, p. 22. As set forth above, DP not only had authorization from Brent to proceed with the work, but while the work was ongoing, DP sent an email to Linda discussing the motor work, and she made a payment in response to the email.

Because Brent authorized the work that DP performed on Linda's car, which Linda accepted, this Court should affirm the jury's finding

that DP performed compensable work for Linda for which it was not compensated, and such work was valued at $3,200.00. *See* C.R. 60.

**Issue Four: The trial court's award of attorney fees to DP should be affirmed, because DP prevailed on the above claims.**

A party may recover reasonable attorney's fees if he prevails and recovers damages on a cause of action for which attorney's fees are recoverable. *See* Tex. Civ. Prac. & Rem. Code § 38.001; *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Section 70.008 of the Texas Property Code gives a trial court the discretion to award reasonable attorney's fees to the prevailing party in a "suit concerning possession of a motor vehicle …" *See* Tex. Prop. Code § 70.008. Likewise, a party prevailing on a claim for quantum meruit is entitled to attorney's fees. *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 406 (Tex. App.—Dallas 2006, no pet.).

An award of attorney's fees must be supported by evidence that the fees were both reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). A trial court determines the reasonableness of an attorney's fee award by considering the factors enumerated in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The reasonableness of an attorney's fee

award generally presents a question of fact. *See Ragsdale v. Progressive Voters League*, 810 S.W.2d 880, 882 (Tex. 1990). Ordinarily, the allowance of attorney's fees rests with the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion. *Volume Millwork, Inc. v. W. Houston Airport Corp.*, 218 S.W.3d 722, 735 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Here, Linda does not dispute the reasonableness of DP's attorney's fee award. Rather, Linda disputes that any attorney's fees should have been awarded, because Linda should have prevailed on her claims. However, as set forth above, DP and Linda agreed to a storage-fee charge, which Linda breached. Linda also failed and refused to pay for the work Brent requested that DP perform on the car. As a result, the trial court's award of attorney's fees is supported by evidence and should be affirmed.

## PRAYER

For the reasons set forth above, Dallas Performance, LLC and Taylor Sims request that this Court affirm the trial court's judgment, and grant Dallas Performance, LLC and Taylor Sims any further relief to which they may be entitled.

Respectfully submitted,

The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas 79401
(806) 712-2889
(806) 712-2529 (f)

/s/ Julie Goen Panger
_____
Julie Goen Panger
State Bar Number 24069793
julie@thelubbocklawyer.com

Counsel for Appellees

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served upon Anthony Arguijo, attorney for Linda Douglas, by electronic service to aarguijo@scottdoug.com on June 1, 2018.

/s/ Julie Goen Panger
_____
Julie Goen Panger

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4(i), I certify that this document contains 6,526 words, excluding those words identified as not being counted in TEX. R. APP. P. 9.4(i)(1), and was prepared on Microsoft Word 2016®.

/s/ Julie Goen Panger
_____
Julie Goen Panger